EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Torres Acosta<br><br>    Peticionario<br><br>              v.<br><br>Junta Examinadora de Ingenieros, Arquitectos y Agrimensores del Estado Libre Asociado de Puerto Rico<br><br>    Recurrida | Certiorari<br><br>2004 TSPR 65<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2000-135

Fecha: 27 de abril de 2004

Tribunal de Circuito de Apelaciones:

                Circuito Regional I

Juez Ponente:

                Hon. German J. Brau Ramírez

Abogado de la Parte Peticionaria:

                Lcdo. Ricardo Robles Caraballo

Oficina del Procurador General:

                Lcda. Lizette Mejías Avilés
                Procuradora General Auxiliar

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Torres Acosta

        Peticionario

            v.

                                    CC-2000-135

Junta Examinadora de
Ingenieros, Arquitectos y
Agrimensores del Estado
Libre Asociado de Puerto Rico

        Recurrida


Opinión del Tribunal emitida por la Jueza Presidenta señora NAVEIRA MERLY


San Juan, Puerto Rico a 27 de abril de 2004

El asunto ante nos va dirigido a evaluar el alcance de la **discreción** que en virtud de su Reglamento se le confiere a una agencia ––que otorga licencias para el ejercicio de alguna profesión–– para anular un examen de reválida cuando se detecta alguna irregularidad en el mismo. En particular, debemos determinar si dicha facultad discrecional le permite obviar los requisitos establecidos por la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. secs. 2101 *et seq.* (en adelante L.P.A.U.) y

su propio Reglamento en el proceso de emitir una resolución final a esos efectos.

Es a la luz de lo anterior que acometemos la tarea de aclarar en qué momento la agencia puede ejercer tal discreción y denegar así una licencia para ejercer alguna profesión.

I

En 1989 el Sr. Luis Torres Acosta (en adelante señor Torres Acosta o peticionario) obtuvo de la Universidad Politécnica de Puerto Rico un grado de ingeniería industrial. Con el propósito de obtener la licencia para practicar dicha profesión, tomó el examen de reválida ofrecido en octubre de 1997 por la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas de Puerto Rico (en adelante Junta). Esta reválida es un examen redactado y corregido por el National Council of Examiners for Engineering and Surveying (en adelante N.C.E.E.S.). Al corregir el examen del señor Torres Acosta, los miembros del N.C.E.E.S. se percataron de que las contestaciones de éste en tres (3) de los ejercicios se asemejaban sustancialmente a las contestaciones oficiales.[1] Éstos,

---

[1] Conforme a los documentos que obran en autos, la contestación del señor Torres Acosta estaba estructurada como la contestación modelo y el ochenta y cinco por ciento (85%) a noventa por ciento (90%) de las palabras utilizadas por éste eran las mismas de la contestación preparada por el N.C.E.E.S.

juzgando por su experiencia, entendieron que dicha correspondencia no era casual. En consecuencia, recomendaron a la Junta que investigara la situación.

El 13 de marzo de 1998 la Junta citó al señor Torres Acosta para una entrevista a la cual podía acudir con representación legal ya que su examen era objeto de investigación. Ese día se presentó sin abogado ante el oficial examinador, Lcdo. Enrique José Mendoza Méndez, quien le indicó que no existía una querella en su contra y que el proceso no era uno de tipo acusatorio.[2] En dicha entrevista el señor Torres Acosta sometió una declaración jurada en la que explicó que el examen se ofreció con libro abierto, por lo que los aspirantes podían llevar documentos de repaso y libros relacionados con las materias a evaluar. Además, señaló que en ocasiones el N.C.E.E.S. repite problemas incluidos en exámenes anteriores. El oficial examinador le mostró al señor Torres Acosta los materiales que envió el N.C.E.E.S. en torno a las contestaciones en controversia para que expusiera sus comentarios. En la entrevista

---

[2] Sobre el particular, el oficial examinador de la Junta, licenciado Mendoza Méndez, le informó que:

Como parte de la investigación que nosotros estamos haciendo y que se nos ha encomendado.... que quede claro que a usted no se le está acusando de nada. Que no hay un proceso querellante [sic] incoado contra usted, no hay una querella contra usted y el proceso no es un proceso acusativo. Transcripción de la vista de 27 de marzo de 1998, pág. 6 (en adelante Transcripción).

éste declaró estar sorprendido del parecido de sus respuestas con la documentación mostrada, pero aclaró que dentro de los materiales utilizados para tomar el examen existían problemas similares. Después de la entrevista sometió varios panfletos, libros de texto, exámenes anteriores y otros documentos que utilizó para prepararse.

Así las cosas, el señor Torres Acosta le pidió a la Junta la calificación de su examen. Ésta declinó hacerlo so pretexto de que el N.C.E.E.S. aún no le había entregado oficialmente sus resultados. Inconforme, acudió directamente al N.C.E.E.S., exponiéndole lo indicado por la Junta. En respuesta, el N.C.E.E.S. señaló que, contrario a lo expresado por la Junta, es a ésta a quien correspondía notificar las puntuaciones que ellos le enviaban. El señor Torres Acosta solicitó nuevamente la puntuación del examen, sin embargo, la Junta no contestó.

Posteriormente, la Junta acordó invalidar la pregunta número 170 del examen por la cual el señor Torres Acosta había obtenido diez (10) puntos. En la resolución emitida el 20 de agosto de 1998 dispuso que "[c]omo consecuencia de esta determinación, su puntuación no alcanza[ba] la nota de pase establecida

por el N.C.E.E.S. y la Junta para éste [sic] examen".[3]
No obstante, el señor Torres Acosta le informó a la
Junta que, aun habiéndole eliminado la contestación a la
pregunta número 170, había obtenido una puntuación mayor
a la mínima requerida para aprobar el examen y, por lo
tanto, solicitó que se le otorgara la correspondiente
licencia.

Ante la negativa de la Junta de notificarle la
puntuación oficial obtenida en la reválida, acudió
entonces al Tribunal de Primera Instancia, Sala Superior
de San Juan, mediante recurso de *mandamus*, para que
dicho tribunal obligara a ésta a notificarle la
puntuación de su examen. Igualmente, solicitó que se le
ordenara a la Junta expedir la licencia de ingeniero ya
que, aun cuando se le había descontado la pregunta
número 170, obtuvo una puntuación extraoficial de
cuarenta y cinco (45) puntos, por lo que cumplió con el
mínimo de cuarenta y un (41) puntos para aprobar el
examen.[4] Aparentemente, fue durante los procedimientos
en el foro de instancia que el señor Torres Acosta
advino en conocimiento de la resolución emitida por la
Junta el 18 de marzo de 1999. En dicha resolución la
Junta, luego de concluir que hubo fraude o engaño para

_____

[3] Esta resolución fue notificada el 17 de septiembre
de 1998.
[4] En la petición de *mandamus* el señor Torres Acosta
alegó que, según le informó el oficial examinador en la
entrevista, tenía la puntuación extraoficial de
cincuenta y cinco (55) puntos en el examen.

obtener la licencia de ingeniero y así lograr la inscripción en sus registros, anuló la totalidad del examen de reválida. En vista de lo anterior, el foro instancia celebró una vista y ordenó a la Junta notificar su dictamen conforme a la ley para que el señor Torres Acosta pudiera proseguir con el recurso de revisión.

La Junta notificó la resolución el 8 de septiembre de 1999. Por consiguiente, el foro de instancia, tras ser enterado de que su orden fue cumplida, dio por desistida la petición de *mandamus* sin perjuicio. El 29 de septiembre de 1999 Torres Acosta acudió al antiguo Tribunal de Circuito de Apelaciones (en adelante Tribunal de Apelaciones) mediante recurso de revisión. Sostuvo, en síntesis, que no existía evidencia en el expediente de la agencia que avalara la determinación de fraude al tomar el examen. El foro apelativo modificó el dictamen emitido por la Junta. **Concluyó que aunque la determinación de fraude no estaba sostenida por el expediente, el Reglamento confería discreción a la Junta para invalidar el examen en caso de detectarse alguna irregularidad como la imputada en este caso.** Inconforme, el señor Torres Acosta acudió ante nos mediante recurso de *certiorari*.

Examinado el escrito, concedimos término a la Junta para que mostrara causa por la cual no debemos revocar el

dictamen del tribunal apelativo.  Con el beneficio de su comparecencia, procedemos a resolver.

## II

En nuestro ordenamiento legal no existe un derecho absoluto al ejercicio de las profesiones u oficios. Dicho ejercicio está subordinado al poder de reglamentación del Estado (*police power*) a los fines de proteger la salud y el bienestar público y evitar el fraude y la incompetencia. *San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. 405, 413 (1993); *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735, 763 (1992).  El Estado tiene amplia discreción en cuanto a la fijación de normas y procedimientos relativos a la admisión al ejercicio de profesiones u oficios. *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567, 586 (1993).

En virtud de dicha facultad, puede condicionar el derecho a practicar una profesión al requisito previo de obtener una licencia, permiso o certificado de alguna entidad u oficial examinador. *Col. Ing. Agrim. P.R. v. A.A.A., supra*; *Pérez v. Junta Dental*, 116 D.P.R. 218, 233 (1985).  Además, puede requerir "la comprobación de conocimientos indispensables y la necesaria solvencia moral del candidato". *De Paz Lisk v. Aponte Roque*, 124 D.P.R. 472, 487 (1989).  Estos requisitos no privan a los ciudadanos de sus profesiones, simplemente las

regulan por el eminente interés público del cual están revestidas. *Asoc. Drs. Med. Cui. Salud v. Morales, supra*. **Sin embargo, no se pueden violentar los derechos constitucionales de los aspirantes so pretexto del ejercicio de esa amplia facultad discrecional.** *San Miguel Lorenzana v. E.L.A., supra*, pág. 414; *Pueblo v. Rodríguez Alberty*, 39 D.P.R. 599, 601-602 (1929). Sobre este particular, hemos expresado que:

> **Al reglamentar el acceso a una profesión el Estado no puede excluir aspirantes de forma, o por motivos que violenten el debido proceso de ley y la igual protección de las leyes.** El Estado puede establecer unos requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otra calificación que esté **racionalmente relacionada con el objetivo de garantizar que los admitidos posean la competencia para practicar la profesión en forma adecuada.** *Santiago v. Trib. Exam. de Médicos*, 118 D.P.R. 1, 6 (1986). (Énfasis suplido y citas omitidas.) Véase *San Miguel Lorenzana v. E.L.A., supra,* págs. 413-414.

Cónsono con lo anterior, al examinar las normas que reglamentan la admisión al ejercicio de alguna profesión u oficio, el tribunal es el llamado a velar porque las mismas no nieguen arbitrariamente la admisión a los aspirantes por motivos ajenos al propósito de la reglamentación. *San Miguel Lorenzana v. E.L.A., supra,* pág. 414.

III

La Asamblea Legislativa creó la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas mediante la Ley Núm. 173 de 12 de agosto de 1988, según enmendada, 20 L.P.R.A. secs. 711 *et seq*. (en adelante Ley Núm. 173), la cual está adscrita a la Rama Ejecutiva del Gobierno del Estado Libre Asociado de Puerto Rico, en específico, al Departamento de Estado.[5] La Junta está facultada para implementar las disposiciones de la citada Ley Núm. 173, *supra*, que reglamenta la práctica de la ingeniería en Puerto Rico. Dicho estatuto dispone para el registro, licenciaturas y certificación para la práctica de la ingeniería, la arquitectura, la agrimensura y la arquitectura paisajista.

En particular, el Art. 2 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711, en lo pertinente, establece como principio fundamental que:

> A los fines de proteger la vida, la salud y la propiedad, y para fomentar el bienestar público general, toda persona que ejerza u ofrezca ejercer la profesión de **ingeniero**... en Puerto Rico, en el sector público o en la empresa privada, estará obligada a presentar

---

[5] El Art. 5 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711c, fue enmendado mediante la Ley Núm. 138 de 25 de julio de 2000. Esta enmienda tuvo el efecto de dividir el organismo administrativo en la Junta Examinadora de Ingenieros y Agrimensores y la Junta Examinadora de Arquitectos y Arquitectos Paisajistas. Sin embargo, las funciones de ambos organismos permanecieron inalteradas y en los restantes artículos de la ley se hace referencia a la Junta como una (1) sola entidad, es decir, de la misma forma que con anterioridad a la enmienda.

> evidencia acreditativa de que está autorizada de conformidad a las secs. 711 a 711z de este título para ejercer como **ingeniero**... en Puerto Rico, que figura inscrita en el Registro de la Junta, y que es miembro activo del Colegio de Ingenieros y Agrimensores de Puerto Rico.... (Énfasis suplido.)

Entre los requisitos para la expedición de la licencia de ingeniero figura la aprobación de exámenes escritos (reválida) en las materias fundamentales de la ingeniería. Art. 11 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711g(5)(b). La Junta es el organismo responsable de ofrecer dichos exámenes de reválida por lo menos una (1) vez al año para determinar la capacidad de todo solicitante a la luz de los requisitos establecidos en la Ley Núm. 173, *supra*. Véase Art. 7 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711e.

Como agencia reguladora de la profesión de ingeniería,[6] la Junta puede, mediante el voto afirmativo de cinco (5) de sus nueve (9) miembros, denegar, suspender, revocar o cancelar cualquier licencia o certificado a un aspirante o titular de la misma, entre otras circunstancias, por "[i]ncurrir en fraude o engaño para lograr su inscripción en los registros de la Junta". Art. 19 de la Ley Núm. 173, *supra*, 20 L.P.R.A.

---

[6] Cabe señalar que aunque la Junta está facultada para reglamentar las profesiones de arquitectura, agrimensura y arquitectura paisajista, en la discusión hemos hecho referencia únicamente a la ingeniería por ser innecesario mencionar las otras profesiones reglamentadas por la Junta para la adjudicación del presente caso.

sec. 711n(a). Además, por ser la Junta una entidad creada por la Asamblea Legislativa, adscrita a la Rama Ejecutiva, y que no está expresamente exenta de la aplicación de la L.P.A.U., *supra*, 3 L.P.R.A. sec. 2101, sus procedimientos deben ser cónsonos con las disposiciones de dicho estatuto. Es a la luz del Reglamento de la Junta y de las garantías procesales establecidas en la L.P.A.U. que debemos examinar la controversia ante nos. Ésta se circunscribe a determinar si la Junta, so pretexto de la discreción que le otorga su Reglamento para anular un examen de reválida de existir alguna irregularidad, actuó al margen de las disposiciones legales aplicables y de su propio Reglamento al emitir una resolución invalidando el examen del señor Torres Acosta, sin antes brindarle a éste la oportunidad de presentar evidencia a su favor.

IV

La resolución de la Junta de 18 de marzo de 1999, de la cual se recurre, resolvió invalidar la totalidad del examen del señor Torres Acosta al concluir que éste se había valido de fraude o engaño para obtener los resultados favorables. Coincidimos con el Tribunal de Apelaciones en que la determinación de la Junta, que establece que el señor Torres Acosta incurrió en fraude, no está sostenida por el expediente. El fraude **nunca** se

presume, sino que tiene que ser establecido por la parte que alega su existencia "con certeza razonable, con preponderancia de prueba que satisfaga la conciencia del juzgador". *De Jesús Díaz v. Carrero*, 112 D.P.R. 631, 639 (1982); *Pardo Santos v. Sucn. de Stella Arroyo*, 145 D.P.R. 816, 825 (1998); *González Cruz v. Quintana Cortés*, 145 D.P.R. 463, 471 (1998).

Ahora bien, el Tribunal de Apelaciones entendió que lo anterior no implicaba que se debía revocar la determinación de la Junta ya que, según éste, **el Reglamento le confiere discreción a dicho organismo para invalidar el examen en caso de detectarse alguna irregularidad en el mismo**. Ello a pesar de que durante el procedimiento, algo accidentado, al peticionario no se le permitió comparecer para defenderse antes de que se procediera a anular el examen. Erró el foro apelativo. Veamos.

V

La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias y asegurarse que éstas desempeñan sus funciones conforme a la ley. *Miranda v. C.C.C.*, 141 D.P.R. 775, 786 (1996). La revisión de las determinaciones de hecho está limitada por lo establecido en la Sec. 4.5 de la L.P.A.U., *supra*, 3 L.P.R.A. sec. 2175. De acuerdo

con esta disposición, las determinaciones de hecho formuladas por las agencias administrativas serán sostenidas por los tribunales, siempre que estén apoyadas en evidencia sustancial que obre en el expediente administrativo. *O.E.G. v. Rodríguez Martínez*, res. el 1ro de abril de 2003, 158 D.P.R. _____ (2003), 2003 T.S.P.R. 48, 2003 J.T.S. 51; *Rivera Concepción v. A.R.P.E.*, res. el 29 de septiembre de 2000, 152 D.P.R. _____ (2000), 2000 T.S.P.R. 149, 2000 J.T.S. 155. No obstante, las conclusiones de derecho son revisables en todos sus aspectos. *O.E.G. v. Román González*, res. el 1ro de mayo de 2003, 159 D.P.R. _____ (2003), 2003 T.S.P.R. 70, 2003 J.T.S. 74.

En *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263 (1999), nos dimos a la tarea de exponer detalladamente lo que constituye el proceso de revisión judicial a la luz de las disposiciones de la L.P.A.U., *supra*, y la jurisprudencia aplicable. Sobre el particular, expresamos que ésta comprende tres (3) áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de la **evidencia sustancial**; y (3) la revisión de las conclusiones de derecho. El récord o expediente administrativo constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. *Id.*, pág. 279.

**Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de manera arbitraria, ilegal o tan irrazonable que sus actuaciones constituyeron un abuso de discreción**. "Así, pues, cuando la agencia interpreta el estatuto que viene llamad[a] a poner en vigor de forma tal que produce resultados contrarios al propósito de la ley, dicha interpretación no puede prevalecer". *Id.*, pág. 280.

Este Tribunal ha sido enérgico al enfatizar que para que los tribunales puedan revisar una decisión administrativa, es vital que las agencias expresen claramente sus determinaciones de hecho y las razones para su dictamen, incluyendo los hechos básicos de los cuales, a través de un proceso de razonamiemto e inferencia, se derivan aquéllos. La expresión de los fundamentos de una decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración. *Id.; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 437-439 (1997). De igual forma, en los procedimientos adjudicativos informales, aun cuando no se exige una explicación basada en determinaciones de hecho a la manera de los procedimientos formales, deben mediar razones suficientes que pongan en conocimiento a las

partes y al tribunal de los fundamentos que propiciaron tal decisión.

En virtud de este esquema, podemos colegir que en materia administrativa los tribunales tienen la tarea de verificar si la agencia ha cumplido con las obligaciones impuestas por ley (L.P.A.U. y su Reglamento) y si su determinación está sustentada por la evidencia sustancial que obra en el expediente.

VI

A pesar de la norma antes expuesta respecto a la revisión judicial, **el Tribunal de Apelaciones resolvió que la actuación de la Junta fue correcta ya que ésta tenía discreción para invalidar el examen en caso de detectarse alguna irregularidad en el mismo.** Fundamentó su dictamen en lo dispuesto por el Art. IV(B-8)(10) del Reglamento de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico, Reglamento Núm. 4378 adoptado el 20 de abril de 1990 y aprobado el 2 de enero de 1991 (en adelante Reglamento).[7] Señaló, además, que la determinación de la Junta a los efectos que el examen del señor Torres Acosta había sido irregular, descansaba en las coincidencias entre su examen y la contestación modelo. Finalmente, indicó que la decisión estaba sostenida por la apreciación del

---

[7] Este Reglamento aún está vigente a pesar de las enmiendas a la Ley Núm. 173, *supra*.

N.C.E.E.S., entidad especializada en este tipo de prueba. No coincidimos con el análisis del foro apelativo.

El Art. IV(B-8)(10) del Reglamento, *supra*, en lo pertinente, dispone lo siguiente:

> De la Junta ser notificada por parte del "National Council of Engineering Examiners"... o de cualquier organismo utilizado por la Junta para corregir el examen, o de la propia Junta, por actuación impropia de parte de alguna de las personas tomando el examen, **la Junta, luego de evaluar el caso en sesión ordinaria o extraordinaria** y a más tardar sesenta (60) días, luego de la fecha de recibida la notificación, la decisión tomada por la Junta se le notificará a la persona afectada. Si la misma ha sido adversa, se le enviará notificación escrita que contenga la explicación de la razón para tal determinación. **Toda persona así afectada, tendrá derecho a solicitar un procedimiento de revisión de la determinación de la Junta, solicitando <u>vista administrativa de acuerdo a la Sección aplicable [Art. VIII] de este Reglamento</u>**.

> De encontrarse la persona incursa en la irregularidad imputada, la Junta podrá a su discreción, invalidar los resultados del examen, suspender a la persona de tomar nuevamente el examen durante un periodo de un año, o someter el caso al Secretario de Justicia, para la acción que corresponda, de acuerdo a las sanciones que impone la Ley. (Énfasis suplido.)

El Tribunal de Apelaciones no se percató que **para que la Junta pueda ejercer su discreción y tomar la determinación de invalidar los resultados de un examen de reválida tiene que cumplir con el procedimiento dispuesto en los Arts. IV (B-8)(10) y VIII de su propio**

**Reglamento,** *supra*. Lo anterior obedece que a que el Art. IV(B-8)(10), *supra*, relacionado con el procedimiento de exámenes, dispone que en caso de que la Junta tome una decisión adversa al aspirante a la licencia de ingeniero, éste tiene derecho a solicitar una vista administrativa "de acuerdo a la Sección aplicable de este Reglamento". Un examen del Reglamento revela que la sección aplicable es el Art. VIII, *supra*, que establece el procedimiento a seguirse en las vistas administrativas.[8]

El Art. VIII del Reglamento, *supra*, dispone que la Junta tendrá la obligación de celebrar una vista pública o administrativa conducida por un panel examinador compuesto por no menos de tres (3) miembros de la Junta, presidido por el Presidente de la Junta, o cualquier miembro de la Junta que éste así designe y requerirá la presencia de aquel miembro de la Junta que represente la profesión envuelta en la controversia. Dentro de un plazo no mayor de treinta (30) días después de finalizada la vista, el panel examinador deberá someter sus determinaciones y recomendaciones a la Junta. **"Dichas recomendaciones y determinaciones deberán ser claras y deberán precisar los fundamentos en que se basan las mismas".** *Id.* (Énfasis suplido.)

---

[8] El Art. VIII, *supra*, es el único relacionado con la vista administrativa a la que alude el Art. IV(B-8)(10).

Cuando la Junta, con el voto afirmativo de cinco (5) de sus miembros, determine que procede la denegación de la licencia, así lo notificará por escrito y correo certificado con acuse de recibo al profesional afectado, aduciendo las razones para ello. Art. 19 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711n. Si este último no está de acuerdo con la determinación, deberá, dentro de los veinte (20) días siguientes al recibo de dicha notificación, solicitar por escrito y correo certificado con acuse de recibo, una vista administrativa. La Junta entonces deberá celebrar la misma no más tarde de los treinta (30) días siguientes a la fecha de recibo de la solicitud y vendrá obligada a citar al promovente, por correo certificado con acuse de recibo, por lo menos quince (15) días antes de la vista. **En dicha vista "[l]a parte promovente tendrá derecho a ser oída en persona o a través de su abogado y podrá presentar la prueba testifical o documental a su favor que estime pertinente".** Art. VIII(D) del Reglamento, *supra*. (Énfasis suplido.)

Concluida la vista, la Junta tomará su decisión en un término que no podrá exceder de veinte (20) días desde la fecha que rinda su informe el panel examinador. La decisión se notificará a la parte promovente, por correo certificado con acuse de recibo dentro de los diez (10) días siguientes a la fecha en que ésta sea

emitida.  **"La decisión de la Junta deberá contener en forma clara y precisa los fundamentos en que se basa la misma"**.  *Id.*  (Énfasis suplido.)  La parte afectada por el dictamen podrá, dentro de los veinte (20) días siguientes a la fecha de recibo de la decisión, solicitar su reconsideración por escrito, a través de correo certificado con acuse de recibo.  La Junta deberá resolver y notificar su determinación por correo certificado con acuse de recibo, dentro de los diez (10) días de haber resuelto.

En aquellos casos donde la reconsideración sea denegada o si, habiéndose concedido, aún sea adversa la decisión de la Junta, o de no optarse por el procedimiento de reconsideración, la parte afectada podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro del término de treinta (30) días contados a partir de la fecha del archivo en autos de la resolución.  Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172; Art. 9.004 de la Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003.[9]

La parte que recurra al foro apelativo deberá enviar copia de su recurso de revisión a la Junta.  Esta última, a su vez, vendrá obligada a elevar el expediente del procedimiento administrativo, incluyendo la

---

[9]    Hemos atemperado el Reglamento a los nuevos cambios incorporados por la Ley de la Judicatura de Puerto Rico de 2003, *supra*; a la L.P.A.U., *supra*; y a la Ley Núm. 173, *supra*.

transcripción de la vista.  De otra parte, el Art. VIII(I) del Reglamento, supra, dispone que "[t]oda vista celebrada por la Junta se regirá en todo aquello que no esté cubierto por este reglamento por el 'Reglamento de Procedimiento Administrativo Uniforme' [L.P.A.U.] para las Vistas Administrativas de Juntas Examinadoras".

Reiteradamente hemos expresado que **las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan**, **en aras de limitar su discreción, y no queda a su arbitrio reconocer o no los derechos allí contenidos.** *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750, 764 (1999).  Véanse, además, *García Cabán v. U.P.R.*, 120 D.P.R. 167, 175 (1987); *Díaz de Llovet v. Gobernador*, 112 D.P.R. 747, 757 (1982); *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53, 56 (1978). Una vez la agencia adopta una norma administrativa, debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que la forjaron.  Además, la agencia viene obligada a velar porque los requisitos estatutarios establecidos en su reglamento sean cumplidos.  *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 81 (1999).

De otra parte, es menester puntualizar que a través de nuestra jurisprudencia hemos reconocido como principio rector que aunque el derecho a un debido proceso de ley en el ámbito administrativo no tiene la rigidez que posee

en la esfera penal, sí requiere un proceso justo y equitativo que garantice y que también respete la dignidad de los individuos afectados.[10] *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 113 (1996); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 231 (1987); *A.D.C.V.P. v. Tribunal Superior*, 101 D.P.R. 875, 882 (1974). En *Magriz v. Empresas Nativas*, 143 D.P.R. 63, 70 (1997), expresamos que:

> Para garantizar el objetivo de hallar la verdad y hacer justicia a las partes, [...] al emitirse una resolución la agencia debe salvaguardar el derecho a la concesión de vista previa, a una notificación oportuna y adecuada, al <u>derecho de ser oído, a confrontarse con los testigos, a presentar prueba oral y escrita a su favor</u>, y a la presencia de un adjudicador imparcial. La decisión administrativa ha de ser informada con conocimiento y comprensión de la evidencia pertinente al caso. Además, deben efectuarse determinaciones de hecho y consagrar los fundamentos para la decisión administrativa. (Énfasis nuestro y citas omitidas.)[11]

VII

Ciertamente, en el caso de autos la Junta no siguió el procedimiento establecido en su propio Reglamento y en las disposiciones de ley aplicables, violentando así el debido proceso de ley al que tenía derecho el señor Torres Acosta.

---

[10] Nos referimos a la vertiente procesal del debido proceso de ley. Véase *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. 881 (1993).

[11] Estas garantías están igualmente reconocidas en la L.P.A.U., *supra*.

Contrario a lo establecido por la Junta en su Reglamento, luego de ésta ser notificada por el N.C.E.E.S. de las coincidencias entre tres (3) respuestas en el examen del señor Torres Acosta y la contestación modelo, no se reunió "en sesión ordinaria o extraordinaria" para tomar una determinación sobre el particular, la cual debía notificar a la persona afectada, el señor Torres Acosta. Art. IV (B-8)(10), *supra*. La Junta citó al señor Torres Acosta para **una entrevista de tipo investigativo ante un (1) solo oficial examinador**, el licenciado Mendoza Méndez. El oficial examinador estableció claramente que el procedimiento no era uno acusatorio, que sólo era parte de una investigación que la Junta le había encomendado. Véase Transcripción, *supra*. Este proceso fue uno informal, pareciéndose a una entrevista o vista informal previa a la denegación de la licencia, más que a una vista adjudicativa. Ante tales circunstancias, la entrevista no puede ser considerada como la vista administrativa establecida en el Art. VIII del Reglamento, *supra*. Ésta tampoco fue conducida por un panel compuesto por no menos de tres (3) miembros de la Junta.

De otra parte, el señor Torres Acosta no tuvo la oportunidad de ser oído y de aportar evidencia para rebatir las imputaciones de fraude que pesaban en su

contra antes de que la agencia emitiera su decisión de anular la totalidad del examen. Por el contrario, el 17 de septiembre de 1998, **sin haberse llevado a cabo otros procedimientos administrativos**, la Junta notificó al señor Torres Acosta que su contestación a la pregunta número 170 había sido invalidada y, en consecuencia, no había obtenido la puntuación mínima requerida para aprobar el examen. Posteriormente, el 18 de marzo de 1999, la Junta determinó que el señor Torres Acosta cometió fraude al tomar el examen y anuló la totalidad de éste.

Como puede notarse, el procedimiento recién descrito dista de las disposiciones reglamentarias aprobadas por la Junta. **Reiteramos que una vez las agencias aprueban reglamentos, en virtud de las facultades que les han sido delegadas por ley, no queda a su arbitrio el cumplir cabalmente con éstos y reconocer los derechos allí contenidos.**

La Junta no tenía discreción para anular la totalidad del examen del señor Torres Acosta sin antes haberle dado efectividad al procedimiento establecido en el Reglamento y permitirle que éste ejerciera los derechos que allí se reconocen. Discreción, en términos jurídicos, constituye una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. No significa poder actuar de una

forma u otra, haciendo abstracción del resto del Derecho, porque ello constituiría un abuso de discreción. *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651, 657-658 (1997); *Córdova Ramos v. Larín Herrera*, res. el 2 de junio de 2000, 151 D.P.R. _____ (2000), 2000 T.S.P.R. 79, 2000 J.T.S. 92. A la luz de lo anterior, es forzoso concluir que la Junta abusó de discreción al invalidar la totalidad del examen del señor Torres Acosta sin seguir los procedimientos contenidos en su propio reglamento y sin reconocerle las garantías del debido proceso de ley.[12] Erró el Tribunal de Apelaciones al avalar la decisión administrativa amparando su dictamen en una interpretación errónea del Reglamento de ésta.

## VIII

Por los fundamentos antes expuestos, se expide el auto de *certiorari* solicitado y se dicta sentencia revocando la emitida por el Tribunal de Apelaciones. Se devuelve el caso a la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas para

---

[12] La conclusión a la que llegamos en el caso de autos en nada limita o altera la facultad que por ley le ha sido delegada a un organismo con relación al otorgamiento de licencias para ejercer una profesión u oficio. Es y continúa siendo el único responsable de velar porque los candidatos a ejercer la profesión u oficio de que se trate estén capacitados y sean aptos para cumplir fiel y cabalmente las serias responsabilidades que entraña el ejercicio de los mismos.

que celebre la vista administrativa de forma compatible con lo aquí resuelto.


MIRIAM NAVEIRA MERLY
JUEZA PRESIDENTA

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luis Torres Acosta

    Peticionario

      v.

                         CC-2000-135

Junta Examinadora de
Ingenieros, Arquitectos y
Agrimensores del Estado
Libre Asociado de Puerto Rico

    Recurrida


SENTENCIA


San Juan, Puerto Rico a 27 de abril de 2004

    Por los fundamentos expuestos en la opinión que antecede, se expide el auto de *certiorari* solicitado y se dicta sentencia revocando la emitida por el Tribunal de Apelaciones. Se devuelve el caso a la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas para que celebre la vista administrativa de forma compatible con lo aquí resuelto.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió una Opinión de Conformidad. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita. El Juez Asociado señor Corrada del Río no intervino.


                Patricia Otón Olivieri
            Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Torres Acosta

   Peticionario

      v.                              CC-2000-135

Junta Examinadora de
Ingenieros, Arquitectos
y Agrimensores del Estado
Libre Asociado de Puerto Rico

   Recurrida


Opinión de Conformidad emitida por el Juez Asociado señor
Federico Hernández Denton


San Juan, Puerto Rico, a 27 de abril de 2004.

Coincidimos con la exposición que la Opinión del Tribunal hace del marco reglamentario que rige los procedimientos de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores del Estado Libre Asociado [en adelante Junta Examinadora o la Junta], cuando se alega que ha ocurrido una irregularidad en la administración de los exámenes que administra. También coincidimos con la determinación de devolver el presente caso a dicho foro administrativo para que dé estricto cumplimientoa las disposiciones reglamentarias que rigen sus procedimientos. Sin embargo,

quisiéramos ampliar la discusión en torno a cómo ese marco reglamentario impone esa conclusión a la luz de los hechos particulares del caso de epígrafe.

I.

Tal y como destaca la Opinión del Tribunal, la Junta Examinadora estaba obligada a dar estricto cumplimiento a las disposiciones reglamentarias que regulan la evaluación de una alegación de irregularidad en la administración de sus exámenes, particularmente en cuanto a la obligación de brindar al peticionario Luis Torres Acosta la oportunidad de defenderse y de presentar prueba a su favor en una vista administrativa.

Al respecto, una lectura de las disposiciones reglamentarias aplicables revela que la vista administrativa a la que Torres Acosta tiene derecho está contemplada por el reglamento para aquellas instancias en las que un aspirante solicita revisión de una decisión adversa tomada por la Junta Examinadora. El reglamento dispone al respecto lo siguiente:

> (10) En caso de que un *proctor* **_observe_** a un candidato que se está comportando en forma no apropiada, o que se esté copiando, éste deberá notificarlo inmediatamente a un miembro de la Junta para que se tome la acción que corresponda. De determinarse actuación impropia de parte de alguna de las personas tomando el examen, el representante de la Junta presente notificará a la persona cometiendo la irregularidad, anotará el nombre de la persona envuelta, el nombre del funcionario que observe la irregularidad, fecha y hora de la irregularidad y el número del examen.
>
> A discreción del miembro de la Junta presente, éste podrá solicitar que la persona

envuelta abandone el lugar del examen. Esta determinación será final.

La notificación del representante de la Junta será recibida y estudiada por la Junta, lo antes posible, en sesión ordinaria o extraordinaria[...] a más tardar treinta (30) días, luego de la fecha de examen. ***La decisión de la Junta le será notificada a la persona afectada. En caso que dicha decisión le sea adversa se enviará una notificación escrita conteniendo la razón de dicha decisión. Toda persona así afectada, tendrá derecho a solicitar un procedimiento de revisión sobre la determinación de la Junta, solicitando vista administrativa de acuerdo a la sección que sea aplicable de este Reglamento***. Reglamento de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico, Sección IVB-8, (énfasis suplido).

Bajo esta circunstancia, el esquema reglamentario contemplado se justifica por el hecho de que una <u>observación directa</u> de una irregularidad durante la administración de un examen pudiera requerir una acción inmediata de la Junta Examinadora, para la cual la realización de una vista administrativa previa sería impráctico.

Por otro lado, el reglamento regula la situación en que la Junta Examinadora es notificada por alguna entidad de alguna irregularidad en la administración del examen, como ocurrió en el caso de autos. Dispone el Reglamento al respecto:

***De la Junta ser notificada*** por parte del *National Council of Engineering Examiners*, del *National Council of Architecture Registration Board* o de cualquier organismo utilizado por la Junta para corregir el examen, o de la propia Junta, [de] actuación impropia de parte de alguna de las personas [que] toman[...] el examen, la Junta, luego de evaluar el caso en

sesión ordinaria o extraordinaria y a más tardar sesenta (60) días, *__luego de la fecha de recibida la notificación__*, *__la decisión tomada por la Junta se le notificará a la persona afectada. Si la misma ha sido adversa, se le enviará notificación escrita que contenga la explicación de la razón para tal determinación. Toda persona así afectada, tendrá derecho a solicitar un procedimiento de revisión de la determinación de la Junta, solicitando vista administrativa de acuerdo a la sección aplicable de este Reglamento__*. Id., (énfasis suplido).

Más adelante, el propio reglamento dispone cuáles son las sanciones que puede imponer la Junta. Señala:

De encontrarse la persona incursa en la irregularidad imputada, la Junta podrá a su discreción, invalidar los resultados del examen, suspender a la persona de tomar nuevamente el examen durante un período de un año, o someter el caso al Secretario de Justicia, para la acción que corresponda, de acuerdo a las sanciones que impone la Ley. Id.

Como puede apreciarse, en ambas circunstancias, ya sea luego de que un funcionario de la Junta observa directamente una irregularidad o luego de que recibe una notificación de alguna conducta sospechosa, la Junta viene obligada a tomar una decisión al respecto. Esa decisión debe ser notificada al aspirante involucrado en la irregularidad, quien, de resultarle adversa, tiene derecho a solicitar su revisión ante el propio organismo con la garantías procesales establecidas en el reglamento de la Junta.

La conclusión de que la vista administrativa es un mecanismo que está disponible luego de una oportuna solicitud de revisión ante la propia Junta se refuerza

al analizar las disposiciones que regulan los procedimientos establecidos en el contexto de una denegación, suspensión provisional, revocación permanente o provisional de una licencia o renovación de licencia. Dicha disposición complementa el esquema antes discutido. Dispone la sección 8 del reglamento, en lo pertinente:

> (B) Cuando la Junta determine que procede **la denegación**, la suspensión provisional, la revocación permanente o la denegación permanente o la denegación provisional o permanente de renovación **de licencia**, así lo notificará por escrito, por correo certificado con acuse de recibo al profesional afectado, aduciendo las razones para ello. **Si el profesional de que se trate no estuviese conforme con la determinación de la Junta, deberá dentro de veinte (20) días siguientes al recibo de dicha notificación, solicitar por escrito, por correo certificado con acuse de recibo, una vista administrativa, con el fin de oponerse a la acción de la Junta**. Id., Sección VIII, (énfasis suplido).

Esta disposición establece que el afectado por una decisión de la Junta --por una denegación, la suspensión provisional, la revocación permanente o la denegación permanente o la denegación provisional o permanente de una renovación de licencia--, puede solicitar la celebración de una vista administrativa. Luego de tal solicitud es que la Junta viene obligada a realizar la vista de conformidad con lo dispuesto en el reglamento.

II.

Al aplicar al caso del epígrafe el esquema procesal que contempla el reglamento de la Junta Examinadora notamos que luego de ser notificada de la irregularidad en la respuesta de Torres Acosta, la Junta inicia lo que según el expediente del caso fue una etapa investigativa. Como correctamente destaca la Opinión del Tribunal, no se trata de la vista administrativa a la que alude el reglamento y que como vimos, está reservada para la etapa de revisión, una vez el aspirante afectado la solicita. Véase, Transcripción de la Vista Administrativa, Apéndice del recurso, en la pág. 7.

Ahora bien, el trámite procesal se complicó debido a que la Junta se negó a tomar una decisión final sobre el caso de Torres Acosta bajo el fundamento de que esperarían que la "National Council of Examiners of Engineering and Surveying" proveyera los resultados oficiales del aspirante. Más tarde, la Junta emitió una resolución (20 de agosto de 1998) en la que informó a Torres Acosta su decisión de invalidar la respuesta que brindó en la pregunta 170 y que por ello no había aprobado el examen.[13] El 26 de octubre de 1998 Torres Acosta envió una carta a la Junta, a través de su representación legal, en la que cuestionó la calificación que le fue notificada. Según los hechos expuestos por la representación legal de Torres Acosta,

---

[13] Esta resolución fue notificada el 17 de septiembre de 1998.

esta carta nunca fue contestada. Eventualmente, ante la inacción de la Junta el aquí peticionario acudió a los tribunales con un recurso de *mandamus*, lo que complicó aún más el trámite procesal.

A nuestro juicio la decisión de la Junta emitida mediante resolución en agosto de 1998, notificada el 17 de septiembre del mismo año, es la decisión final adversa al aspirante que puede ser objeto de revisión por el peticionario, según lo contemplado en el Reglamento de la Junta Examinadora. La carta del 26 de octubre del abogado de Torres Acosta a la Junta Examinadora pudiera ser considerada como una solicitud de revisión de esa determinación que activaría el trámite reglamentario de vistas administrativas al cual alude su ponencia en el caso de epígrafe, y que ya antes señalamos inicia ante una oportuna solicitud de revisión de un aspirante.

Debe advertirse, sin embargo, que esta carta fue enviada más de un mes después de la notificación de la resolución de agosto de 1998. Conforme a la sección VIII del Reglamento de la Junta Examinadora de Ingenieros, la parte afectada por una decisión que deniega, suspende o revoca una licencia tiene 20 días para solicitar la vista administrativa. Podría argumentarse, por lo tanto, que Torres Acosta incumplió con dicho término.

No obstante, la resolución de agosto de 1998 no advirtió a Torres Acosta de su derecho a solicitar vista

administrativa ni el término que tenía para ello. Ante este hecho, y en atención al tortuoso trámite procesal que ha tenido este caso, resulta adecuado devolver el recurso a la Junta Examinadora de Ingenieros con instrucciones de que realice la vista administrativa de acuerdo al procedimiento específico que establece su reglamento.

Por ello, es correcta la decisión de este Tribunal de devolver el caso a la Junta Examinadora, más aún cuando Torres Acosta no alega que el actual reglamento de la Junta Examinadora de Ingenieros lesiona derechos constitucionales de los aspirantes en lo que concierne al proceso para considerar alegaciones de irregularidades durante la administración de sus exámenes. Por el contrario, sólo reclama que se dé estricto cumplimiento a lo dispuesto en el Reglamento de la Junta Examinadora. Véase, Petición de Certiorari, en la pág. 16 ("Tampoco[...] el recurrente ha cuestionado la autoridad de la recurrida para crear y adoptar normas y reglamentos. Por el contrario, en estas normas y reglamentos es que el recurrente basó sus argumentos para establecer que es la recurrida quien no ha cumplido con su Ley [...] ni con su Reglamento [...]").

Federico Hernández Denton<br>Juez Asociado