ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ISABEL BURGOS y OTROS**<br><br>Recurridos<br><br>v.<br><br>**MIGUEL COLÓN APONTE y OTROS**<br><br>Peticionarios | KLCE202301298 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Guayama**<br><br>Civil Núm.: **GM2020CV00321**<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

### RESOLUCIÓN

En San Juan, Puerto Rico, a 12 de enero de 2024.

Comparece ante nos el Sr. Miguel A. Colón Aponte (Sr. Colón o Peticionario) mediante un recurso de *Certiorari*, en el cual solicita que revoquemos la Resolución emitida por el Tribunal de Primera Instancia, Sala de Guayama (TPI), el 19 de octubre de 2023. En dicho dictamen, el TPI declaró no ha lugar su solicitud de hogar seguro.

Por los fundamentos que expondremos a continuación, denegamos expedir el auto de *certiorari*.

I.

El presente caso inició el 16 de julio de 2020, cuando Isabel Burgos, Leonides Pérez, Kydia Karina Burgos Cotto, Wilmenid Burgos, Edwin Leo Burgos Jr., Faith Denisse Hernández Padilla, Leo

---

[1] Mediante Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de Panel en sustitución del Hon. Ricardo G. Marrero Guerrero.

Omar Hernández, Shellimar Hernández Torres, Luis Gabriel Hernández Roque y Luis Joel Hernández Roque, todos en su condición de miembros de la Sucesión de la Sra. María Antonia Pérez Rivera (en adelante, los Recurridos) presentaron una *Demanda* sobre liquidación de comunidad hereditaria contra el Sr. Colón, viudo de la Sra. María Antonia Pérez Rivera (la Causante). Alegaron que, durante el matrimonio de la Causante y el Sr. Colón ambos edificaron e hipotecaron una estructura ganancial en un solar privativo del Sr. Colón en el Municipio de Guayama, Puerto Rico. Los Recurridos alegaron que no deseaban continuar con la comunidad existente entre las partes y que las gestiones extrajudiciales para dividir el bien común han resultado infructuosas, por lo que pidieron que ésta se liquidase.

El Sr. Colón presentó su *Contestación a Demanda*. Entre sus defensas afirmativas, esbozó que había otorgado escritura de hogar seguro sobre el inmueble objeto del presente pleito.

Luego de varios trámites procesales, el 18 de julio de 2023, el TPI dictó una Sentencia Sumaria Parcial[2] en la que determinó que no existía controversia sobre los siguientes hechos: 1) el codemandado Miguel A. Colón Aponte estuvo casado con la causante María A. Pérez Rivera, madre y abuela de los demandantes; 2) durante la vigencia del matrimonio Colón-Pérez ambos edificaron una estructura ganancial en un solar privativo del demandado Miguel A. Colón Aponte; 3) el Registro de la Propiedad de Guayama acredita la estructura descrita anteriormente como un inmueble ganancial; 4) la dirección física de tal propiedad y el solar donde enclava la misma es la Calle Vicente Palés, Esquina Tetuán 108 en Guayama, Puerto Rico; y 5) la propiedad inmueble así descrita e

---

[2] Véase, Alegato en oposición de los Recurridos, Ap. 2, págs. 7-13.

identificada consiste de un edificio de apartamentos de los cuales se percibe un canon de renta mensual.

No obstante, el TPI determinó que existía controversia sobre los siguientes hechos: 1) la determinación sobre la cuantía de las rentas que ha generado y genera la propiedad en controversia; 2) la adjudicación final entre las partes de los frutos que ha producido y produce el bien común a raíz del arrendamiento de las unidades o apartamentos individuales; 3) la existencia de cualquier crédito a beneficio de cualquiera de las partes ya sea por el cobro de rentas no distribuidas entre los comuneros o la realización de mejoras u obras de mantenimiento a la propiedad común, si algunas; y 4) el valor de tasación de la estructura ganancial sujeta a división y el solar privativo donde enclava la edificación.

Posteriormente, el 29 de agosto de 2023, el Sr. Colón presentó una *Moción en Torno a Hogar Seguro*. Por efecto de lo dispuesto en la Ley Núm. 195-2011, según enmendada, conocida como la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar (Ley Núm. 195-2011), *infra*, reclamó su derecho a hogar seguro sobre la referida propiedad pues adujo que era su vivienda "durante casi toda su vida y quien además cuenta 87 años de edad y está esencialmente ciego". Anejó la Escritura Núm. 12 sobre *Acta sobre Reconocimiento de Hogar Seguro*, otorgada ante el notario Heriberto Colón Rosario, el 13 de febrero de 2018, y evidencia de que dicha escritura fue presentada ante el Registro de la Propiedad el 15 de febrero de 2018, Asiento 2018-012913-GA01. Por último, solicitó al TPI que decrete que su derecho de hogar seguro prima sobre el derecho de liquidación y adjudicación de la comunidad hereditaria; se difiera la liquidación y adjudicación del inmueble en controversia; y emita cualquier otra medida que armonice los intereses de los involucrados en la presente controversia.

Por su parte, los Recurridos presentaron una *Moción en Reacción a Solicitud de Hogar Seguro*. Negaron la aplicación de la Ley Núm. 195-2011, pues ella únicamente aplica a propiedades inmuebles que le pertenezcan al individuo siempre y cuando sean utilizadas exclusivamente como residencia principal. En este caso, el inmueble en controversia no le pertenece al Sr. Colón en carácter de vivienda principal, pues esta le pertenece a una comunidad hereditaria. Alegaron que, tampoco aplica la Ley Núm. 195-2011, pues esta persigue proteger a propiedades residenciales y no a las propiedades comerciales como la que nos ocupa. A su vez, anejaron una tasación comercial realizada a la propiedad.

Mediante *Resolución* emitida el 19 de octubre de 2023, el TPI declaró No Ha Lugar la *Moción en Torno a Hogar Seguro* presentada por el Sr. Colón. Concluyó que "las Protecciones brindadas por la Ley Núm. 195-2011 son accionables contra terceros, entiéndase, acreedores o demandantes en acciones distintas a la de epígrafe. Por lo que, no procede ningún reclamo de Hogar Seguro contra la Comunidad Hereditaria".

Inconforme, el 21 de noviembre de 2023, el Sr. Colón instó el presente recurso de *Certiorari* en el que le imputa al TPI la comisión de los siguientes errores:

1. Incurrió en error el TPI al no reconocer que el derecho a hogar seguro prima sobre el derecho de los recurridos a la partición de herencia.

2. Incidió el TPI al no diferir la partición del inmueble y, como medida paliativa, que se disponga, conforme a las disposiciones del derecho hereditario, de las rentas que generan los apartamentos que conforman dicho inmueble.

El 9 de enero de 2024, los Recurridos presentaron su alegato en oposición. En esencia, reiteraron la corrección del dictamen recurrido. Evaluados los planteamientos de las partes, disponemos de la controversia que nos ocupa.

II.

A.

El auto de *certiorari* es el vehículo procesal extraordinario mediante el cual un tribunal de mayor jerarquía puede corregir un error de derecho cometido por un tribunal inferior. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *Íd.* De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

En específico, la Regla 52.1, *supra*, establece que este foro apelativo expedirá el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas cuando se recurre de una resolución u orden bajo las Reglas 56 (Remedios Provisionales) y 57 (*Injunction*) de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. Sin embargo, y por excepción, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...]

De ordinario, quien presenta un recurso de *certiorari* pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso. Distinto al

recurso de apelación, ante un recurso de *certiorari,* el tribunal tiene discreción para atender el asunto planteado. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011); *Pueblo v. Díaz De León,* 176 DPR 913 (2009). Esta discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013). No significa poder actuar en una forma u otra haciendo abstracción del resto del Derecho, pues ello ciertamente constituiría un abuso de discreción. *Íd.*; *Torres v. Junta de Ingenieros,* 161 DPR 696 (2004).

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que este foro considerará para determinar si expedimos o no un auto de *certiorari.* Estos son los siguientes:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

B.

El derecho a hogar seguro procura que todo ciudadano posea una "protección básica ante el riesgo de ejecución de una sentencia en contra de su residencia". *Money's People, Inc. v. López Llanos,*

202 DPR 889, 902 (2019). Este derecho constituye una limitación a la responsabilidad universal del deudor. *Íd.* En consecuencia, "a pesar de que un deudor responde con todos sus bienes presentes y futuros en el cumplimiento de sus obligaciones", la protección de hogar seguro "tiene el efecto de insular parte de su patrimonio y removerlo del tráfico comercial en el cobro de ciertas obligaciones". *Íd.* (Notas al calce omitidas).

Aunque la legislación anterior en nuestro ordenamiento reconocía el derecho a hogar seguro, con la aprobación de la Ley Núm. 195-2011 se amplió inequívocamente la protección de hogar seguro que hasta ese momento estaba disponible. En particular, la ley estableció que "[t]odo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios *que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal*". (Énfasis suplido). Art. 3 de la Ley Núm. 195-2011, 31 LPRA sec. 1858.

El Tribunal Supremo de Puerto Rico (TSPR) interpretó que ese lenguaje refleja una clara intención legislativa "de crear un derecho *individual* en cuanto al hogar seguro, pero limitándolo solamente a aquella propiedad que sea utilizada por el titular como su *residencia principal*". (Énfasis en el original). *Rivera García v. Registradora, supra*, a la pág. 637.

La propiedad designada hogar seguro quedará protegida "de embargo, sentencia o ejecución ejercitada para el pago de todas las deudas, excepto las deudas reconocidas como excepciones en la sec. 1858a de este título". Art. 5 de la ley Núm. 195-2011, 31 LPRA sec. 1858b. Sin embargo, el TSPR ha expresado que el derecho a hogar seguro no es absoluto, y está sujeto a varias excepciones

enumeradas en el Artículo 4 de la Ley Núm. 195-2011. *Rivera García v. Registradora, supra*, a la pág. 637. Dicho artículo establece que se considerará renunciado el derecho a hogar seguro en casos: (a) donde una hipoteca grave la propiedad protegida; (b) de cobro de contribuciones estatales y federales; (c) donde se le deban pagos a contratistas para reparaciones de la propiedad protegida; (d) donde aplique el Código de Quiebras Federal; y (e) donde hayan préstamos, hipotecas, contratos refaccionarios y pagarés constituidos a favor de o asegurados u otorgados por agencias y entidades que enumera la ley. 31 LPRA sec. 1858a. Salvo en dichos casos, la propiedad quedará protegida "de ser embargada o ejecutada como pago de toda deuda", insertándose este derecho en escenarios entre acreedores y deudores. *Rivera García v. Registradora, supra*, a la pág. 637.

Por otro lado, si bien es cierto que la protección de hogar seguro es un derecho personal, una vez el individuo titular de la propiedad lo reclama, dicho derecho tiene acceso al Registro y así "adquiere una dimensión real y otra *erga omnes*". *Rivera García v. Registradora, supra*, a la pág. 639. Por un lado, surte un efecto real sobre la finca pues, en el Registro, ésta recibe una anotación marginal y por otra parte, la propiedad en cuestión queda removida del tráfico comercial y fuera del alcance de los acreedores, salvo las referidas excepciones. *Íd.*

El Artículo 9 de La Ley Núm. 195-2011, 31 LPRA sec. 1858f, contempla dos formas mediante las que la persona propietaria puede reclamar su derecho a hogar seguro, siendo la primera al momento de adquirir la propiedad en cuestión, haciéndolo constar en el título correspondiente. *Íd.*, a la pág. 640. El otro modo se refiere a aquellas instancias en que "la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que *el propietario o propietarios* de la finca otorgue(n) un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro,

para que el Registrador de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente". (Énfasis en el original). *Íd.*

Ahora bien, en los casos de muerte, abandono o divorcio, el Artículo 6 de la citada ley establece, en lo pertinente, que:

> La protección establecida en [el Artículo 5 de la Ley Núm. 195-2011] subsistirá después de la muerte de uno de los cónyuges a beneficio del cónyuge supérstite mientras éste continúe ocupando dicho hogar seguro, [...]. 31 LPRA sec. 1858c.

No obstante, en el caso de *Rivera García v. Registrador, supra,* el TSPR interpretó el derecho de hogar seguro de una viuda en el contexto de una comunidad hereditaria, comunidad a la que resaltó "le aplican 'las disposiciones generales sobre comunidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad". *Íd.,* a la pág. 642; *Vega Montoya v. Registrador,* 179 DPR 80, 88 (2010). Luego de indicar que "el derecho de los titulares sujetos a una comunidad de bienes no es de tal extensión como el de un titular individual", el TSPR concluyó que la ley exigía que "en casos de propiedades con más de un dueño, todos los propietarios comparezcan a la autorización del Acta Notarial que reclama la anotación del derecho a hogar seguro". *Rivera García v. Registrador, supra,* a las págs. 642-643.

Sin duda, la Asamblea Legislativa entendió que el efecto de dicha decisión era que "el cónyuge supérstite pierde su derecho de hogar seguro si los coherederos no desean o no pueden utilizar la propiedad de la comunidad hereditaria como su residencia principal; o que los coherederos pierdan el derecho a hogar seguro sobre sus respectivas residencias principales para poder hacer valer el derecho a hogar seguro de su madre o padre". Véase, Exposición de Motivos de la Ley Núm. 64-2018. Al considerar que la interpretación esbozada en dicho caso trastocaba la intención legislativa de proteger al cónyuge supérstite mientras éste ocupase

la propiedad designada como hogar seguro, aun si ese derecho no estaba inscrito en el Registro, la Asamblea legislativa aprobó la Ley Núm. 64-2018. Mediante ésta, se reiteró la protección del cónyuge supérstite y se enmendó el Artículo 9 para que estableciese que:

> En los casos donde la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que el propietario o propietarios de la finca otorgue(n) un Acta ante Notario Público, [...]. Asimismo, en el caso de la residencia principal del cónyuge supérstite, *éste podrá comparecer para la anotación de la constancia registral del carácter de hogar seguro de la propiedad, sin la comparecencia de los herederos titulares de la propiedad*. Dicha protección cobijará la propiedad contra todo reclamante, excepto las deudas reconocidas en el Artículo 4 de esta Ley, mientras permanezca el carácter de residencia principal para el cónyuge supérstite. (Énfasis suplido).

### III.

En su recurso, el Peticionario plantea que el TPI incidió al no reconocer su derecho a hogar seguro sobre el derecho de los Recurridos a requerir la división del inmueble en controversia. Sin embargo, a la luz de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, declinamos intervenir con la decisión recurrida, por considerarla razonable. Veamos.

En cuanto a la denegatoria de la solicitud instada por el Peticionario para reclamar su derecho de hogar seguro, el TPI fundamentó su determinación en lo dispuesto en el Artículo 5 de la Ley Núm. 195-2011, *supra*. En lo pertinente, la referida disposición establece taxativamente que el derecho a hogar seguro protege aquellos inmuebles que sirven de residencias principales contra embargos, sentencias o ejecuciones ejercitadas para el pago algunas deudas. Es decir, en el referido estatuto lo que se protege es la vivienda principal del deudor en una relación crediticia con el acreedor para evitar que la propiedad sea embargada o ejecutada como pago de una deuda. Sin embargo, ese no es el caso aquí, pues las partes son miembros de una comunidad hereditaria. En otras

palabras, el derecho a hogar seguro es oponible a terceros y no comuneros.

En consecuencia, no procede que intervengamos con la determinación del TPI. Debido al resultado que hemos llegado, resulta innecesario analizar el restante señalamiento de error.

IV.

Por los fundamentos antes expuestos, se deniega expedir el auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones