El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Por medio de este recurso se nos solicita la revisión de una sentencia emitida por el Tribunal de Apelaciones. En *876 ésta se revocó un dictamen del Departamento de Asuntos del Consumidor (D.A.Co.) que decretó la resolución del con-trato de compraventa de un vehículo de motor, al determi-nar la existencia de dolo en el consentimiento.
1 — I I — I
El 28 de septiembre de 2002, la aquí peticionaria, Sra. Ivette García Reyes (señora García Reyes o compradora), adquirió mediante una compraventa con Cruz Auto Corporation (Cruz Auto o vendedora) un vehículo de motor nuevo, marca Mitsubishi, modelo Nativa del 2001.
El precio de venta fue de $22,000, el cual se materializó mediante la firma del documento titulado “Descripción de Venta” y del “Contrato de venta al por menor a plazos y pagaré”.
En cuanto al pago del pronto y el balance financiado, existen versiones encontradas. Es la contención de la se-ñora García Reyes que al momento de la compraventa dio un pronto de $4,000 en efectivo y que financió los restantes $18,000 a través del Banco Scotiabank de Puerto Rico (Scotiabank).(1) Según la versión ofrecida por la compra-dora, cuando ésta solicitó el recibo de pago correspon-diente, Cruz Auto le indicó que no era necesario, pues dicha información constaba en el “Contrato de venta al por menor a plazos y pagaré”.(2) Además, realizó un pago en *877 efectivo de $200 en concepto de la tablilla del vehículo, del cual Cruz Auto expidió un recibo.
Por otro lado, sürge del expediente que el Sr. Iván Ca-siano, vendedor de Cruz Auto, informó a la señora García Reyes antes de la venta que al vehículo se le había reem-plazado el guardalodos y eil parachoques (bumper) delantero. Se le explicó, además, que el frente del vehículo se había pintado, porque estaba rayado. Esta información consta por escrito en el documento de la “Descripción de venta”, el cual contiene tanto la firma de la señora García Reyes como la del vendedor de Cruz Auto, Sr. Iván Casiano.(3)
Una vez la compradora tomó posesión del vehículo, éste comenzó a confrontar problemas mecáñicos. El primer día, mientras la señora García Reyes conducía su vehículo se le apagó y un técnico de Cruz Auto tuvo que recogerlo.(4)
Más adelante, la señora García Reyes notó que, mien-tras conducía el vehículo, éste vibraba y se desviaba hacia el lado izquierdo. De esta manera, descubrió la existencia de un descuadre en la parrilla, el foco izquierdo y el para-choques (bumper) delantero de la unidad. Además, surgie-ron problemas con los frenos y la necesidad de alineamiento.
Para atender esa sitúación se comunicó telefónicamente con Cruz Auto, en donde le indicaron que llevara el vehículo al taller de servicios de Cruz Auto ubicado en Humacao. Luego de reiteradas gestiones para que acepta-ran el vehículo, pues el taller alegaba estar llenó, el 16 de enero de 2003 se aceptó el vehículo y se inició la reparación.(5)
*878 El 27 de enero de 2003, la compradora se personó a las instalaciones de Cruz Auto en Humacao para obtener in-formación sobre su vehículo o recogerlo. Mientras esperaba en el taller, alguien le comentó que el vehículo había sido chocado. Posteriormente, se le entregó una nota que conte-nía el mensaje siguiente:
Ivette García:
Nativa blanca no está lista, el trabajo es más fuerte de lo esperado, hay que centralizar el compacto.
Lista viernes, Gracias.
Ante esta situación, la señora García se molestó y exigió una conversación con personal gerencial de Cruz Auto. En dicha reunión reclamó la cancelación del negocio efectuado y el cambio de la unidad. Además, expresó que nunca le informaron que el vehículo tenía problemas con el compacto.(6) El Sr. Iván Casiano atendió sus reclamaciones y le indicó que no tenía problema alguno en cambiarle la unidad por otra del mismo modelo. No obstante, le hizo saber que en ese caso tenía que pagar el pronto real de $4,000, que se le había rebajado como crédito en la unidad adquirida.
Insatisfecha, la señora García Reyes, envió una misiva a Scotiabank, institución bancaria que financió el vehículo, para informarle sobre los problemas que estaba confron-tando con la unidad y las gestiones habidas con Cruz Auto. Indicó, además, que el vehículo adolecía de vicios ocultos y que ello no se le había notificado al momento de la venta, razón por la cual interesaba cancelar el contrato y la devo-lución de las prestaciones.
*879 Así las cosas, el 5 de febrero de 2004, la señora García Reyes presentó ante D.A.Co., Oficina Regional de Caguas, una querella contra Cruz Auto, Mitsubishi Motor Sales of Caribbean y Scotiabank. En ésta alegó que al momento de la compraventa no se le notificaron todos los daños que adolecía el vehículo, específicamente el hecho de que éste había recibido un fuerte impacto en la parte delantera cuando se bajaba de la grúa, en las instalaciones de Mitsubishi Motor Sales. Sostuvo que, de haber conocido este dato, no hubiese comprado el vehículo. Por tal motivo, so-licitó la cancelación del contrato y la devolución de su dinero.(7)
El 5 de marzo de 2003, la compradora enmendó la que-rella para incluir en su reclamación que algunas piezas de su automóvil, el bonete y el guardalodos, no fueron regis-tradas en el Departamento de Transportación y Obras Pú-blicas (DTOP).
Cruz Auto contestó la querella, negando todas las alega-ciones de la compradora y aclaró que, al momento de la compraventa, ésta ofreció únicamente la cantidad de $200 para cubrir el costo de la tablilla. Explicó, además, que todas las reparaciones efectuadas al vehículo fueron infor-madas antes de la venta a la señora García Reyes y que, por esta razón, se le otorgó un crédito de $3,900 al precio total del vehículo.(8)
Durante el proceso administrativo se realizaron tres *880 inspecciones técnicas al vehículo: el 26 de febrero de 2003, el 2 de abril de 2003 y el 5 de marzo de 2004. La primera inspección fue realizada por el Sr. Luis E. Solá Giralt, téc-nico automotriz enviado por la Oficina Regional de Caguas. Su informe reflejó que el bonete, el guardalodos y el para-choques (bumper) de la unidad habían sido reemplazados. Además, indicó que el bonete estaba descuadrado y que le faltaban los sujetadores del guardafangos. El inspector hizo constar en la hoja de observaciones que las piezas re-emplazadas al vehículo fueron las originales.(9)
El 2 de abril de 2003 se llevó a cabo la segunda inspec-ción realizada por el Sr. Luis H. Abrahante, técnico de DA.Co. En su informe expresó que el cubrefaltas del lado izquierdo se apreciaba nuevo, a diferencia del bonete, el cual aparentaba haber sido reemplazado. Señaló que las reparaciones realizadas al vehículo fueron superficiales, debido a que la magnitud del daño no precisaba mayores intervenciones. La tercera inspección estuvo a cargo del Sr. José Terrón, técnico de D.A.Co. En su informe confirmó las observaciones de las inspecciones anteriores e indicó que las piezas reemplazadas tenían el número de serie asig-nado por el DTOP.(10)
La señora García Reyes objetó las tres evaluaciones rea-lizadas por los técnicos de D.A.Co. a su vehículo. Alegó, entre otras cosas, que las observaciones realizadas por el Sr. Carlos J. Rivera Arzuaga, perito contratado por la com-pradora, no coincidían con las observaciones realizadas por los técnicos de D.A.Co. Sostuvo que éstos no realizaron *881 una prueba de carretera al vehículo,(11) único modo que, a juicio del perito de la señora García Reyes, se podía apre-ciar el fuerte impacto que había recibido el compacto del vehículo. Cabe señalar que el perito de la señora García Reyes testificó que el examen del vehículo reflejó serios descuadres productos de un fuerte impacto.
El 30 de septiembre de 2003 Scotiabank anunció su re-presentante legal y el 16 de octubre de 2003, Mitsubishi Motor Sales of Caribbean, Inc. contestó su querella.
El 22 de octubre de 2003 la señora García Reyes solicitó el traslado de su caso de la Oficina Regional de Caguas de D.A.Co. a la división de San Juan, petición que fue concedida. En esa misma fecha Scotiabank presentó una moción de desestimación.
Posteriormente, la señora García Reyes solicitó a D.A.Co. que ordenara a Mitsubishi Motors someter toda la información que evidenciara el modo como Cruz Auto ha-bía adquirido el vehículo. A base de esta información se confirmó que Cruz Auto compró el vehículo por el precio de $14,500 a Mitsubishi Motors Sale of Caribbean.(12)
El 2 de septiembre de 2004 se llevó a cabo la reunión entre abogados. En ésta, las partes acordaron relevar a Mitsubishi Motors de la reclamación. Por esta razón se or-denó el cierre y archivo de la querella en cuanto a éste último.
El 22 de noviembre de 2004, las. partes presentaron, de manera separada, su informe con antelación al juicio. La *882 señora García Reyes alegó que: (1) al momento de la com-pra, Cruz Auto, de manera intencional, no le notificó que la unidad había sido adquirida mediante subasta pública de Mitsubishi Motor Sales ni que el vehículo había recibido un fuerte impacto en el frente; (2) no fue informada del reemplazo del bonete, y como consecuencia del golpe reci-bido, otras piezas habían sufrido daños considerables; (3) de habérsele informado debidamente estos daños, no hu-biese comprado la unidad. Por último, adujo en su querella la existencia de dolo grave.
Por su parte, Cruz Auto negó que el vehículo tuviera un defecto en el compacto y alegó que, según los documentos firmados por las partes al momento de la compraventa, surgía que la compradora aceptó una reducción al precio de venta, en consideración a las reparaciones efectuadas al vehículo.
El 30 de noviembre de 2004 se celebró la vista adminis-trativa, en la cual testificaron la señora García Reyes, el perito de la compradora, Sr. Carlos J. Rivera Arzuaga, el perito de Cruz Auto, Sr. Ramón González Gómez, el vende-dor de Cruz Auto, Sr. Iván Casiano Resto, el hojalatero a cargo de las reinstalaciones de la unidad y la reparación del vehículo, Sr. Héctor Rodríguez, y el Sr. Julio Cruz, em-pleado y representante de Mitsubishi en Cruz Auto.
Durante esta vista, el perito de la compradora declaró que según su experiencia, el vehículo había recibido un fuerte impacto por la parte delantera. El perito de Cruz Auto no estuvo de acuerdo en que el vehículo había sufrido un fuerte impacto, pero admitió que, en efecto, el vehículo fue impactado. Esto también fue confirmado por el testigo, Sr. Héctor Rodríguez, hojalatero que instaló el bonete nuevo y tapalodos.
El vendedor, Sr. Iván Casiano, testificó que no le in-formó a la vendedora que el vehículo había sido impactado, y que sólo le explicó que se había reemplazado el guarda-lodos y el parachoques (bumper) delantero por causa de *883 unos rayazos.(13) Alegó que ésta no cuestionó nada al respecto.
Con estos hechos, el 28 de enero de 2005, D.A.Co. emitió su resolución. En ella, concluyó que Cruz Auto incumplió con lo dispuesto en el Art. 22.1 del Reglamento de Garan-tías de Vehículos de Motor del Departamento de Asuntos del Consumidor, Reglamento Núm. 4797 del Departamento de Estado de 28 de septiembre de 1992 (Reglamento Núm. 4797), pág. 20. Dicho artículo impone a todo vendedor de un vehículo nuevo de motor la obligación de informar por escrito al comprador, previo a la venta, si ha sido objeto de alguna reparación cosmética significativa o mecánica estructural. Al ocultarle información a la señora García Reyes sobre el impacto recibido por la unidad, incurrió en dolo grave que daba lugar a la resolución del contrato entre las partes. Por tal razón, decretó la nulidad del contrato y ordenó a Cruz Auto y Scotiabank reembolsarle solidaria-mente a la señora García Reyes el pronto y las mensuali-dades pagadas, luego de lo cual la compradora tendría que devolver el vehículo a la vendedora.
El 15 de febrero de 2005, Cruz Auto y Scotiabank solici-taron oportunamente la reconsideración. En síntesis, ale-garon que no era procedente la resolución del contrato ni la restitución de los $4,000 alegadamente dados como pronto por la señora García Reyes. D.A.Co. declaró “no ha lugar” a la solicitud. Fundamentó su determinación en que el testi-monio de la señora García Reyes le mereció entera credibilidad.
Inconforme, Cruz Auto acudió mediante un recurso de revisión ante el foro intermedio apelativo. Adujo que la prueba desfilada ante el foro administrativo no fue sufi-ciente para decretar la resolución del contrato de compra-venta celebrado por las partes. Asimismo, expresó que D.A.Co. erró en la aplicación de la doctrina de saneamiento *884 y resolución del contrato, al no aplicar la Ley Núm. 330 de 2 de septiembre de 2000, Ley Complementaria de Garantías de Vehículos de Motor,(14) y al considerar como vicios ocultos unos daños que sufrió el vehículo dentro del taller de servicios. Scotiabank no recurrió ante el Tribunal de Apela-ciones ni se unió al recurso presentado por Cruz Auto.
El foro intermedio apelativo acogió el recurso y concluyó que del documento titulado “Descripción de venta”, presen-tado en evidencia ante D.A.Co., se podía constatar que los $3,900 que la señora García Reyes alegó haber ofrecido como pago del pronto fueron en realidad un descuento o crédito otorgado por Cruz Auto a la compradora.
Expresó que el documento de la “Descripción de venta” contenía la firma de la compradora y que en él aparecía la siguiente anotación del vendedor: “Cliente tiene conoci-miento que a la unidad se le reemplazó el guardalodo y bumpér delantero y luego se pintó al frente. 9/28/02.” Apén-dice de la Petición de certiorari, pág. 636.
Asimismo sostuvo que el “Contrato de ventas al por me-nor a plazos y pagaré” no podía considerarse una evidencia de un pago de pronto, según expresó D.A.Co. en su resolu-ción, ya que este documento no refleja necesariamente las negociaciones extrínsecas al documento entre el vendedor y el comprador.
En lo que respecta a 1'a resolución del contrato, el foro intermedio apelativo determinó que no procedía la resolu-ción del contrato, decisión emitida por D.A.Co., puesto que la compradora tenía conocimiento de los desperfectos de la unidad y los defectos presentes fueron corregidos. Dicho foro expresó en su sentencia que, conforme al Art. 21.3 del Reglamento Núm. 4797, supra, pág. 19, el vendedor o su representante tiene una oportunidad razonable de reparar los defectos presentes. Si no lo hace o no puede corregirlos, entonces procede la resolución del contrato de compra-venta o reducir proporcionalmente su precio de venta. Por *885 estos fundamentos, el Tribunal de Apelaciones revocó la resolución emitida por D.A.Co.
De esta determinación, recurre ante nos la señora Gar-cía Reyes y plantea la comisión de los errores siguientes:

Erró el Tribunal de Apelaciones al determinar que la prueba desfilada ante el Departamento de Asuntos del Consumidor no era suficiente para decretar la resolución del contrato, y orde-nar la restitución de las prestaciones.

Erró el Tribunal de Apelaciones al sustituir el criterio del De-partamento de Asuntos del Consumidor aún cuando existe su-ficiente evidencia sustancial en el expediente administrativo para sostener las determinaciones de hechos y de derecho for-muladas en su resolución.

Erró el Tribunal de Apelaciones al intervenir con la determi-nación administrativa del Departamento de Asuntos del Con-sumidor y al no prestarle la debida deferencia. Petición de certiorari, pág. 14.
I — I HH I — i
En síntesis, la peticionaria plantea ante nosotros que el Tribunal de Apelaciones abusó de su discreción al interve-nir con las determinaciones de hecho del ibró administra-tivo especializado, sustituyendo arbitrariamente la apre-ciación de la prueba de dicho organismo por sus apreciaciones particulares. En vista de ello, examinaremos si la prueba desfilada ante D.A.Co. constituyó evidencia sustancial para decretar la resolución del contrato de com-praventa efectuado entre la García Reyes y Cruz Auto.(15) Veamos.
A. El Art. 1213 de nuestro Código Civil,(16) dispone que:
No hay contrato sino cuando concurren los requisitos siguien-tes:
1. Consentimiento de los contratantes.
*886 2. Objeto cierto que sea materia del contrato.
3. Causa de la obligación que se establezca.
Sabido es que en nuestro ordenamiento jurídico el consentimiento de las partes es uno de los elementos esenciales que debe concurrir para la existencia de todo contrato. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o a prestar algún servicio. Ahora bien, dicho consentimiento supone la concurrencia de ciertos presupuestos necesarios para su validez y eficacia, entre ellos, la declaración de la voluntad libre de vicios.
Según el Art. 1217 del Código Civil,(17) el consentimiento será nulo si éste fuese prestado por error, violencia, intimidación o dolo.(18) Existe dolo cuando —con palabras o maquinaciones insidiosas por parte de uno de los contratantes— se induce a la otra parte a firmar un contrato que, sin ellas, no lo hubiera hecho.(19) Además, constituye dolo callar sobre una circunstancia importante relacionada con el objeto del contrato.(20) Sin embargo, no todo tipo de dolo produce la nulidad de un contrato. A tales efectos, el Art. 1222 del Código Civil, supra, dispone que “\p\ara que el dolo produzca la nulidad de los contratos, deberá ser grave y no haber sido empleado por las dos partes contratantes”. (Enfasis suplido.)(21) Así, se afecta el con- *887 sentimiento que inspira y persuade al contratante.(22) Este dolo grave se ha denominado dolo causante.(23)
Existe otra especie de dolo, denominado por el Art. 1222 del Código Civil, supra, como dolo incidental, cuya existencia no produce la nulidad del contrato. Este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación, sino que facilita la celebración del contrato.(24) En el dolo incidental, contrario al dolo causante, existe la voluntad de contratar del perjudicado, pero hay engaño en el modo como se celebra el contrato. Sin éste, el contrato de todas formas se hubiera celebrado pero no según las mismas condiciones. Cualquier engaño con respecto a esas condiciones no arranca por sí sólo el consentimiento en la totalidad de la obligación, sino en algún extremo o particularidad de ella.(25) El dolo incidental sólo obliga a indemnizar en daños y perjuicios al que lo empleó. (26)
En ocasiones pasadas hemos expresado que en la determinación de si existe dolo que anula el consentimiento se debe considerar, entre otras cosas, la preparación académica del perjudicado así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa.(27) Puede ser que en un caso, el dolo no surja de un simple hecho, sino del conjunto y la evolución de las circunstancias y los manejos engañosos.(28)
Finalmente, el dolo, al igual que el fraude, no se presume, pero eso no significa necesariamente que tenga que *888 probarse directamente. Puede establecerse mediante infe-rencia o por evidencia circunstancial(29)
Una vez decretada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos y el precio con sus intereses.(30)
B. En virtud de la Ley de Garantías de vehículos de Motor,(31) D.A.Co. aprobó el Reglamento Núm. 4797. El. objetivo de este reglamento es proteger adecuadamente a los consumidores en Puerto Rico en la adquisición de vehículos de motor, asegurarles que estos vehículos sirvan al propósito para el cual fueron adquiridos y que reúnan las condiciones necesarias para garantizar al comprador la protección de la vida y propiedad.(32) Por ende, éste se debe interpretar liberalmente a favor del consumidor. (33)
Este reglamento aplica a toda persona natural o jurí-dica que sé dedique por sí misma, o por mediación de su representante o agente, o como agente o representante del fabricante, o como intermediario de otra persona, a la venta de vehículos de motor nuevos o usados en Puerto Rico.(34)
El Reglamento Núm. 4797, supra, dispone en su Art. 22.1, pág. 20, lo siguiente:
Todo vendedor de un vehículo de motor nuevo notificará al comprador por escrito, si previo a la venta de dicho vehículo, éste ha sido objeto de alguna reparación cosmética sustantiva o mecánica estructural. (Enfasis suplido.)
*889 También, el Art. 34 del Reglamento Núm. 4797, supra, pág. 31, advierte que:
Nada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales del E.L.A., así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos y la acción redhibitoria que reconoce el Có-digo Civil de Puerto Rico. (Enfasis suplido.)
Se desprende, por lo tanto, que las determinaciones de D.A.Co. relacionadas a estos asuntos deben ser cónsonas con los artículos del Código Civil sobre las acciones de sa-neamiento en la compraventa.(35)
En lo qué respecta a la acción de saneamiento por vicios ocultos, entre las obligaciones que le impone nuestro Código Civil a un vendedor, se encuentra su responsabilidad ante los vicios o defectos ocultos que tuviere la cosa vendida. Esta obligación se denomina saneamiento por vicios o defectos ocultos.(36) Estos vicios pueden ser de índole jurídica, en cuyo caso consistirían en una limitación al derecho transmitido, o pueden ser de hecho, como cuando se trata de defectos intrínsecos de la cósa vendida. (37) A los vicios ocultos se les denomina redhibitorios, ya que pueden deshacer la venta. (38)
En torno a la acción redhibitoria por vicios ocultos en la cosa vendida, el Art. 1373 del Código Civil,(39) dispone lo siguiente:
El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido *890 o habría dado menos precio por ella', pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tam-poco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión debía fácilmente reconocerlos. (Énfasis suplido.)
El Art. 1374 del Código Civil(40) dispone lo siguiente:
El vendedor responde al comprador del saneamiento por los vicios o defectos ocultos en la cosa vendida aunque los ignorase.
Esta disposición no regirá cuando se haya estipulado lo con-trario, y el vendedor ignorara los vicios o defectos ocultos de lo vendido.
Siendo el propósito o la causa de la venta para el com-prador adquirir la cosa, el servirse de ella, dicho propósito dejaría de realizarse si una vez entregada la cosa, se ve privado de ésta o imposibilitado de aplicarla a los usos que le son propios.(41)
Por lo tanto, conforme a las disposiciones de nuestro Código Civil, el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó (“acción redhibitoria”)(42) o podrá rebajar una cantidad proporcional del precio (“acción quanta minoris”).(43) Además, si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, se le indemnizará de los daños y perjuicios si opta por la rescisión.(44)
Para que proceda una acción de saneamiento por vicios ocultos han de coincidir los requisitos siguientes: (1) no deben ser conocidos por el adquirente; (2) el defecto debe ser grave o suficientemente importante para hacer la cosa *891 impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida.
Cónsono con lo anterior, en Ford Motor Co. v. Benet, 106 D.P.R. 232, 238 (1977), sostuvimos lo siguiente:
Para llevar a cabo la acción redhibitoria por vicios ocultos en autos defectuosos, la jurisprudencia ha establecido que sola-mente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió.
Para establecer qué son vicios redhibitorios, he-mos adoptado el criterio de “aquellos defectos que exceden de las imperfecciones menores que cabe esperar normalmente en un producto determinado, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor”.(45)
Sobre este particular, reiteramos el criterio generalmente aceptado por la doctrina de que, la apreciación de la importancia del defecto, para resolver la procedencia de la acción redhibitoria, es esencialmente una cuestión de hecho, justificándose, por lo tanto, nuestra intervención con la discreción del juzgador sólo en aquellos casos que acusen una ausencia de prueba adecuada o la comisión de error manifiesto en su apreciación. (46)
C. La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse de que éstas desempeñen sus *892 funciones conforme a la ley.(47) Debido a que las decisiones administrativas tienen a su favor la presunción de legali-dad y corrección,(48) hemos sostenido reiteradamente que las conclusiones e interpretaciones de los organismos ad-ministrativos especializados merecen gran consideración y respeto.(49) Por esta razón, debemos ser muy cautelosos al intervenir con estas determinaciones.(50)
Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción.(51) El criterio rector será la razonabilidad de la agencia recurrida. Así, pues, al realizar su función revisora, el tribunal está obligado a tener en cuenta la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí.(52) Esta labor revisoria exige distinguir entre cuestiones de interpretación estatutaria, en las que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa. (53)
Cuando una agencia interpreta el estatuto que está lla-mado a poner en vigor, de forma tal que produce resultados contrarios al propósito de esa ley, dicha interpretación no prevalece. (54)
La revisión de las determinaciones de hechos está limitada por lo establecido en la See. 4.5 de la Ley de *893 Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), que dispone, en lo per-tinente, lo siguiente:(55)

Sec. 2175. Alcance

El tribunal podrá conceder el remedio apropiado si deter-mina que el peticionario tiene derecho a un remedio.
Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evi-dencia sustancial que obra en el.expediente administrativo. 3 L.P.R.A. see. 2175.
Siempre y cuando estén sustentadas por evidencia sus-tancial que obre en el expediente administrativo, serán sostenidas las determinaciones de hechos formuladas por la agencia.(56) Esto es así, porque las decisiones de lás agencias administrativas tienen a su favor una presunción de legalidad y corrección, la cual debe ser respetada por los tribunales mientras la parte que la impugna no produzca suficiente evidencia como para derrotarla.(57)
De ordinario, los tribunales no intervendrán en las de-terminaciones de hechos de las agencias si existe evidencia sustancial que las apoye.(58) La norma de evidencia sustan-cial, aplicable a las determinaciones de hecho, persigue evitar la sustitución del criterio del tribunal revisor.(59)
Para que un tribunal pueda decidir que la evidencia sustancial en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre *894 que existe otra prueba en el expediente que razonable-mente reduzca o menoscabe el peso de tal evidencia.(60)
En Chase Manhattan v. Emmanuelli Bauzá, 111 D.P.R. 708, 712-713 (1981), sostuvimos lo siguiente:
Cuando se trata, por último de organismos administrativos, como DACO., a los que se ha facultado para adjudicar quere-llas, la revisión judicial debe ser especialmente rigurosa para servir de contrapeso a la amplitud de la discreción administrativa.
No obstante, las conclusiones de derecho son revisables en todos sus aspectos.(61) Esto no significa, sin embargo, que al ejercer su función revisora el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado constantemente antes y después de la vigencia de la L.P.A.U. que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos.(62) Si de la totalidad del expediente administrativo se sostienen las determinaciones adoptadas por el foro administrativo, los tribunales no deben sustituirlas por su propio criterio.(63)
El proceso de revisión judicial comprende tres áreas: (1) la concesión del remedio, (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (3) la revisión de las conclusiones de derecho.(64) El expediente administrativo constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior.(65)
*895 Finalmente, sobre este tema, el foro judicial podrá sustituir el criterio de la agencia por el propio sólo en aquellas ocasiones cuando no encuentre una base racional que fundamente la actuación administrativa,(66) No obstante, es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por lo tanto, está facultado para apreciar la prueba apoyándose en su propio criterio.(67)
IV
Teniendo en cuenta los principios reseñados, debemos resolver si erró el Tribunal de Apelaciones al revocar la determinación de D.A.Co. de ordenar la resolución del con-trato de compraventa. Conforme a la decisión emitida por D.A.Co., la prueba desfilada demostró que el consenti-miento de la compradora estuvo viciado por la actuación dolosa de Cruz Auto al ocultar que el vehículo había reci-bido un fuerte impacto por su parte delantera previo a la venta.
En su sentencia, el foro apelativo expresó que no proce-día la resolución del contrato, ya que la señora García Reyes tenía el conocimiento de los desperfectos y éstos fueron reparados. El fundamento de esta conclusión fue única-mente que la “Hoja de descripción de venta” contenía la anotación siguiente: “Cliente tiene conocimiento que la uni-dad se le reemplazó guardalodo y bumper delantero y luego se pintó el frente por unos rayasos [sic].” Diferimos.
D.A.Co. celebró una vista evidenciaria, en la cual las partes desfilaron prueba. En su resolución, formuló sus de-terminaciones de hechos y conclusiones de derecho las *896 cuales fueron específicas y fundamentadas en la evidencia que surge del expediente.
Fue un hecho probado que Cruz Auto adquirió el vehí-culo a un precio menor, mediante compra a Mitsubishi Motors Sale. En ésta se venden aquellas unidades que, aun-que nuevas, han sufrido ciertos desperfectos. Por ende, es razonable concluir que Cruz Auto conocía que el frente del vehículo había recibido un fuerte impacto al caerse del car carrier. Debido a este accidente, Cruz Auto tuvo que reem-plazarle al vehículo el guardalodos, el parachoques delan-tero (bumper), el bonete y los bujes de la barra estabili-zadora.
Como bien expresó D.A.Co. en su resolución, el Art. 22.1 del Reglamento Núm. 4797, supra, impone a todo vendedor la obligación de notificar por escrito al comprador, previo a la venta, si ei vehículo ha sido objeto de alguna reparación cosmética significativa o mecánica estructural. Si un ven-dedor incumple con la disposición reglamentaria antes ci-tada, el consentimiento otorgado en un contrato de com-praventa sería nulo.
En sus conclusiones de derecho, D.A.Co. determinó que, conforme a dicha reglamentación, Cruz Auto estaba obli-gado a informar a la señora García Reyes que las repara-ciones efectuadas al vehículo se debían a que la unidad que deseaba adquirir había recibido un impacto en su parte delantera. De la “Hoja de descripción de venta” surge que tal circunstancia fue omitida. Además, el vendedor admitió en su declaración que no le informó a la compradora que el vehículo había sido impactado ni el cambio del bonete.
El lenguaje utilizado por Cruz Auto no fue claro ni es-pecifica por escrito que el vehículo fue impactado. Dicha anotación sólo alude a unos rayazos. El no ofrecerle la in-formación correcta a la señora García Reyes impidió que tuviese un conocimiento completo de todos los elementos relacionados con la unidad que adquiría. De este modo le privó de emitir un consentimiento informado. Tampoco *897 Cruz Auto evidenció que informó verbalmente a la compra-dora de las circunstancias referidas.
La señora García Reyes demostró con su testimonio que actuó conforme a la creencia de que las reparaciones fue-ron por causa de unos rayazos y no producto de unos golpes significativos. D.A.Co. determinó correctamente que si al momento de la compraventa la señora García Reyes hu-biese tenido la información correcta con respecto al vehí-culo, no lo hubiese adquirido.
El accidente del vehículo era un elemento esencial que la peticionaria hubiese tomado en consideración al momento de contratar, de haberlo conocido. Ciertamente, la parte vendedora actuó de manera dolosa al ocultar esta informa-ción y vició el consentimiento de la compradora.
Por otro lado, una vez la señora García Reyes adquirió el vehículo, éste comenzó a presentar una serie de desperfectos. Conforme a las reparaciones mecánicas que obran en el expediente y las determinaciones de hechos formuladas por D.A.Co., el bonete y el parachoques esta-ban descuadrados, le faltaban los sujetadores del guarda-fangos, presentaba una vibración irregular y presentaba problemas dé alineamiento. Desde el primer momento, el vehículo se le apagó en ocasiones y presentó, además, pro-blemas en los frenos.
Finalmente, según consta por la nota que se le entregó en el taller, la reparación que el vehículo requería era mayor a la realizada, puesto que el compacto del vehículo estaba afectado como consecuencia del fuerte impacto recibido. La señora García Reyes nunca tuvo conocimiento de este daño.
En ocasiones anteriores hemos tenido oportunidad de expresarnos en torno a los vicios ocultos cuando el objeto de compraventa es un vehículo de motor. Sabemos que la reparación sustantiva o magnitud del defecto oculto es una cualidad relativa, ya que no se trata de que el defecto quede oculto en sentido literal, sino que lo sea para el com- *898 prador atendiendo sus características individuales.(68) Esto significa que no será responsable el vendedor por los vicios ocultos cuando el comprador sea un perito que debiera fá-cilmente conocer los defectos por razón de su ocupación u oficio.(69)
Tras analizar los informes del personal especializado y la evidencia que consta en el expediente, quedó demos-trado que, verificada la entrega, Cruz Auto no cumplió con su deber de garantizar la plena posesión de la cosa vendida. El vehículo en cuestión tenía irnos vicios ocultos que hicieron el objeto de la venta impropio para su uso, de forma tal que de haberlos conocido la compradora no lo hubiese adquirido. Cruz Auto no llevó a cabo una repara-ción adecuada del vehículo previo a la venta. El daño reci-bido en su parte delantera y los problemas presentados en el compacto mermaron notablemente el valor de la unidad y fueron ocultados.
Como hemos expresado anteriormente, para la procedencia de una acción redhibitoria, la apreciación de la importancia de los defectos es una cuestión de hechos en la cual el foro administrativo, en este caso, está en mejor posición que el foro apelativo.
Al quedar evidenciada la existencia de vicios ocultos, a la señora García Beyes le asiste una acción redhibitoria al amparo del Código Civil y que, a su vez, está sostenida en el Art. 35 del Reglamento Núm. 4797, supra. La determi-nación de D.A.Co. al ordenar la resolución del contrato de compraventa fue dentro de sus prerrogativas adminis-trativas.
Por tal razón, entendemos que la credibilidad otorgada a los testigos merece nuestra deferencia y que el remedio concedido por la agencia fue adecuado. En adición, Cruz Auto no aportó evidencia ante el Tribunal de Apelaciones *899 que derrotara la presunción de corrección que caracteriza la decisión del foro administrativo.
Erró el foro apelativo intermedio al intervenir con la determinación administrativa.
V
Por los fundamentos antes expuestos, procede la revoca-ción de la sentencia del Tribunal de Apelaciones y la reins-talación de la resolución de D.A.Co.
La Juez Asociada Señora Rodríguez Rodríguez concu-rrió sin opinión escrita. La Jueza Asociada Señora Fiol Matta no intervino.

 La señora García Reyes sostuvo que efectúo un pago de $4,000 dólares en efectivo. En el “Contrato de venta al por menor a plazos y pagaré” esa cantidad aparece en el espacio correspondiente a pronto en efectivo. Apéndice de la Petición de certiorari, pág. 633.
.Por otra parte, Cruz Auto sostuvo que la señora García Reyes no pagó esa cantidad y que se le otorgó un crédito de $3,900, por las reparaciones efectuadas a la unidad. En la hoja de “Descripción de venta” la cantidad aparece en el espacio corres-pondiente a crédito otorgado. Apéndice de la Petición de certiorari, pág. 616.

 Testimonio vertido por la señora García Reyes durante la vista celebrada en el Departamento de Asuntos del Consumidor (D.A.Co.) el 30 de noviembre de 2004. Apéndice de la Petición de certiorari, pág. 633. Véase además, la Trascripción de 30 de noviembre de 2004, líneas 10-14.

 Apéndice de la Petición de certiorari, pág. 616.

 No surge claramente del expediente el motivo por el cual el vehículo se apagó. La señora García Reyes declaró durante su testimonio que no recordaba la causa de este desperfecto. Sin embargo, el Sr. Iván Casiano, vendedor de Cruz Auto, declaró que creía recordar que se debió a problemas relacionados con la batería o el alternador. Ambos concurrieron en que el vehículo fue reparado en dos días.

 Surge de la sentencia emitida por el Tribunal de Apelaciones que la señora García Reyes no recogió su vehículo del taller en el cual se estaba reparando hasta el *878 3 de febrero de 2005, luego de que el Departamento de Asuntos del Consumidor (D.A.Co.) emitiera su resolución en el caso.
Esto a pesar de que el Sr. Félix D. Ríos, gerente del lote de Humacao, le remi-tiera dos cartas certificando que la unidad estaba reparada y en perfectas condiciones. Transcripción de 30 de noviembre de 2004, Apéndice de la Petición de certiorari, págs. 84-86.

 El compacto es una pieza ubicada al frente del vehículo la cual está cubierta por el tapalodo y el parachoques {bumper). Según la versión ofrecida por el perito de la compradora, para que se afecte el compacto, el golpe ha de ser de gran magnitud.

 Apéndice de la Petición de certiorari, pág. 628.

 Testimonio vertido por el Sr. Iván Casiano durante el contrainterrogatorio realizado en la vista administrativa:
“P. ¿Y ella le preguntó por qué le reemplazaron esas piezas?
“R. Yo le expliqué que fue que la unidad tuvo un leve accidente bajándola de uno de los ‘car carriers’ y nosotros Mitsubishi nos dio un descuento a nosotros y el des-cuento se da para alante.
“P. Okey, pero ... si yo voy a comprarle un carro a usted y usted me dice que le reemplazaron x piezas y yo le pregunto que qué fue lo que le pasó. ¿Qué palabras usted dijo?. Porque usted a preguntas de ambos compañeros especificó que le informó que había sido rallada bajándola del “car carriers” ... en la Mitsubishi. ¿Eso fue lo que se le informó?
“R. Exacto.
“P. ¿Y por qué no lo escribió aquí en este documento, no es necesario?
*880 “R. Bueno, si el cliente me lo exige, yo lo escribo. O sea, yo hice la anotación y el cliente me la firmó bajo su conocimiento en ese momento.” Apéndice de la Petición de certiorari, págs. 378-379.

 Apéndice de la Petición de certiorari, págs. 618-621.

 Sobre este particular cabe señalar que Cruz Auto vendió la unidad sin haber obtenido el número de identificación correspondiente del Departamento de Transpor-tación y Obras Publicas (DTOP) requerido cuando se reemplazan piezas a los vehículos. Posteriormente, Cruz Auto realizó las gestiones requeridas y lo obtuvo seis meses después de efectuada la venta.

 Esta alegación fue confrontada durante la vista administrativa. Se eviden-ció un aumento en el millaje del vehículo, luego de las evaluaciones realizadas por los peritos de D.A.Co.

 Al respecto, el Sr. Julio Cruz, empleado y representante de la línea Mitsubishi y Hyundai en Cruz Auto, declaró lo siguiente:
“... Mitsubishi tiene unas unidades, varias unidades al año que tienen unos desperfectos como por ejemplo ... [rayazos], que hay que ponerle un tapalodo, un bonete, un “bumper” y cogen todas esas unidades y las lleva[n] a más gente, a los “dealers” Mitsubishi para vendérnoslas a nosotros, no es una subasta pública como se ha hablado aquí.... Eso es una subasta que se le da solamente a los concesionarios Mitsubishi, allí no puede ir el que vende Ford, el que vende Mazda, solamente es de nosotros.” Apéndice de la Petición de certiorari, Transcripción oral, pág. 381.

 Véase Apéndice de la Petición de certiorari, Transcripción de Vista Adminis-trativa de 24 de enero de 2004.

 10 L.P.R.A. see. 2066 et seq.

 “Evidencia sustancial” es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión.

 31 L.P.R.A. see. 3391.

 31 L.P.R.A. see. 3404.

 Se entiende por dolo “todo un complejo de malas artes, contrario a la hones-tidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio pro-pio, en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto, sino qm , además, ha previsto y querido las consecuencias antijurídicas prove-nientes de él”. (Énfasis suplido.) Colón v. Promo Motors Imports, Inc., 144 D.P.R. 659, 666 (1997).

 Art. 1221 del Código Civil, 31 L.P.R.A. see. 3408.

 Bosques v. Echevarría, 162 D.P.R. 830 (2004).

 31 L.P.R.A. see. 3409.

 Colón v. Promo Motor Imports, Inc., supra.

 Rivera v. Sucn. Díaz Luzunaris, 70 D.P.R. 181, 185-186 (1949).

 Colón v. Promo Motor Imports, Inc., supra.

 Íd.

 31 L.P.R.A. sec. 3409.

 Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503, 519 (1988).

 Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583, 616 (1982).

 Mayagüez Hilton Corp. v. Betancourt, 156 D.P.R. 234 (2002); Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980).

 31 L.P.R.A. sec. 3514.

 Ley Núm. 7 de 24 de septiembre de 1979 (10 L.P.R.A. see. 2051 et seq.).

 Art. 2 del Reglamento de Garantías de Vehículos de Motor, Departamento de Asuntos del Consumidor, Reglamento Núm. 4797 del Departamento de Estado, 28 de septiembre de 1992 (Reglamento Núm. 4797).

 Reglamento Núm. 4797, supra, Art. 4.

 Íd., Art. 3.

 Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387(1999).

 Art. 1363 del Código Civil, 31 L.P.R.A. see. 3801.

 Ferrer v. General Motors Corp., 100 D.P.R. 246, 255 (1971).

 Íd.

 31 L.P.R.A. sec. 3841.

 31 L.P.R.A. see. 3842.

 Ferrer v. General Motors Corp., supra.

 La acción “redhibitoria” representa la restitución “in integrum”, ya que co-loca las partes en la misma condición en la que se hallaban antes de la compraventa.

 La acción quanti minoris, conlleva la restitución del precio percibido en proporción a la pérdida de valor de la cosa como consecuencia del defecto.

 31 L.P.R.A. see. 3843.

 García Viera v. Ciudad Chevrolet, Inc., 110 D.P.R. 158, 162 (1980); D.A.C.O. v. Marcelino Mercury, Inc., 105 D.P.R. 80, 84 (1976).

 Íd.

 Torres v. Junta Ingenieros, 161 D.P.R. 696 (2004); Miranda v. C.E.E., 141 D.P.R. 775, 786 (1996).

 Íd.

 Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 688 (2000); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).

 Metropolitan S.E. v. A.R.Pe., 138 D.P.R. 200, 213, (1995); Fuertes y otros v. A.R.Pe. , 134 D.P.R. 947 (1993); Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992).

 Torres v. Junta de Ingenieros, supra; Franco v. Depto. de Educación, 148 D.P.R. 703, 710 (1999).

 Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004).

 Adorno Quiles v. Hernández, 126 D.P.R. 191, 195 (1990); Rebollo v. Yiyi Motors, supra.

 Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279-280 (1999).

 Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2101 et seq.

 Torres v. Junta de Ingenieros, supra; O.E.G. v. Rodríguez, 159 D.P.R. 98 (2003); Rivera Concepción v. A.R.Pe., 152 D.P.R. 116, 121 (2000).

 Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); M. & B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319 (1987).

 Pacheco v. Estancias, 160 D.P.R. 409, 432-433 (2003).

 Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 95 (1997).

 Metropolitana S.E. v. A.R.Pe., supra.

 Torres v. Junta de Ingenieros, supra; O.E.G. v. Rodríguez, supra.

 Rebollo v. Yiyi Motors, supra.

 Íd.

 Torres v. Junta de Ingenieros, supra; Mun. de San Juan v. J.C.A, supra.

 Mun. de San Juan v. J.C.A., supra.

 Rebollo v. Yiyi Motors, supra.

 Íd. Véanse, además: Dye Tex P.R. Inc. v. Royal Ins. Co. P.R., 150 D.P.R. 658 (2000); Rodríguez Roldán v. Mun. de Caguas et al., 133 D.P.R. 694 (1993).

 J.M. Manresa y Navarro, Comentarios al Código Civil Español, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. 10, Vol. 1, pág. 338.

 Íd.