| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>Panel VIII | | |
| RAFAEL SÁNCHEZ RODRÍGUEZ<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrida | KLRA202500131 | *Revisión Judicial* procedente del Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br>Evaluación Plan Institucional y Solicitud de Traslado |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Juez Ponente, Adames Soto

## SENTENCIA

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece ante nosotros el señor Rafael Sánchez Rodríguez (señor Sánchez Rodríguez o parte recurrente), por derecho propio, y como miembro de la población correccional, solicitando que revisemos la *Resolución* del 6 de diciembre de 2024 emitida por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (CCT o parte recurrida). En el dictamen aludido, el CCT determinó reclasificar el nivel de custodia de la parte recurrente de mínima a mediana al no dar la muestra para prueba toxicológica en el tiempo requerido, lo que conllevó un positivo administrativo.

Por los fundamentos que expondremos a continuación, confirmamos la resolución recurrida.

### I. Resumen del tracto procesal

Por hechos acaecidos el 1 de enero de 2015, el 6 de mayo de 2015 el señor Sánchez Rodríguez fue sentenciado a extinguir una pena de dieciocho (18) años de cárcel por tentativa de robo agravado, y Arts. 5.04 y 5.15 de la

Número Identificador

RES2025_____

Ley de Armas, por lo que se encontraba confinado en la Institución Penal Sabana Hoyos 216. El 5 de diciembre de 2024, la técnica de servicios sociopenales Tania González Colón emitió un *Informe para Evaluación del Plan Institucional* en el cual le recomendó al CCT reclasificar el nivel de custodia del señor Sánchez Rodríguez de mínima a mediana en vista de que, en esa misma fecha, la parte recurrente no dio la prueba toxicológica en el tiempo reglamentario.

Al día siguiente se emitió el documento intitulado *Escala de Reclasificación de Custodia* del cual surge que el recurrente obtuvo una puntuación total de cero (0), la cual corresponde a un nivel de custodia mínima. No obstante, se utilizó la modificación discrecional para un nivel de custodia más alto por *desobediencia ante las normas* para recomendar el nivel mediano de custodia. La explicación ofrecida fue que se administró un positivo administrativo al no dar muestra para prueba toxicológica en el tiempo estimado por reglamento.

También, surge del expediente el *Acuerdo del Comité de Clasificación y Tratamiento* emitido por el CCT el 6 de diciembre de 2024, donde acogió la recomendación de reclasificar el nivel de custodia de la parte recurrente y solicitó su traslado al CDO Mayagüez. El fundamento recogido en el acuerdo fue el siguiente:

1) EL CONFINADO NO DIO MUESTRA TOXICOL[Ó]GI[C]A LUEGO DE ESPERAR EL TIEMPO REGLAMENTARIO DE 2 HORAS QUE ESTABLECE EL R[E]GLAMENTO ESTO LUEGO DE HABER SIDO DEBIDAMENTE ORIENTADO SOBRE LAS CONSECUENCIAS QUE CONLLEVAR[Í]A. SE PROCEDE CONFORME A LO ESTABLECIDO [EN] EL REGLAMENTO INTERNO PARA LA ADMINISTRACI[Ó]N DE PRUEBAS PARA DETECTAR EL USO DE SUSTANCIAS CONTROLADAS EN LA POBLACIÓN CORRECCIONAL DEL DCR

Por último, en esa misma fecha, el CCT emitió una *Resolución* donde adoptó el acuerdo que precede. Además, realizó las siguientes determinaciones de hechos:

- El 10 de febrero de 2015 el confinado ingresa con auto de prisión provisional emitida por el Tribunal de Arecibo por los delitos de Art. 5.04 y 5.15 de la Ley de Armas y Robo agravado con una fianza ascendente a $150.00.00.
- El 6 de mayo de 2015 fue sentenciado a extinguir una sentencia de 18 años de cárcel por Tentativa de Robo Agravado, Art. 5.04 y 5.15 de la Ley de Armas.

- El 23 de junio de 2015 fue clasificado inicialmente en custodia máxima conforme a delitos y sentencia.
- El 26 de junio de 2016 se reclasifica de máxima a mediana por cumplir con el plan institucional establecido.
- El 13 de diciembre de 2016 fue sometido a prueba toxicológica arrojando negativo a todo uso de sustancia controlada.
- El 30 de junio de 2017se ratifica custodia mediana para continuar observando sus ajustes.
- El 21 de junio de 2018 se ratifica custodia mediana.
- El 22 de septiembre de 2018 incurre en la querella administrativa 315-18-147 por los códigos 207 - Estar en área no autorizada y 215 - Interferir con un recuento.
- El 25 de octubre de 2018 salió incurso en la querella administrativa 315-18-147 por el código 215- Interferir con un recuento, fue amonestado.
- El 14 de junio de 2019 se ratifica custodia mediana toda vez que salió incurso en querella Nivel II en el periodo evaluado.
- El 28 de enero de 2021 se ratifica custodia mediana. Este periodo de la evaluación de custodia se vio afectado debido a que el confinado estuvo en CMC y por cuarentena Covid.
- El 5 de marzo de 2021 se cumplió con la toma de la muestra de ADN para cumplir con lo que estipula la Ley 175.
- El 22 de junio de 2021 se reclasifica de custodia mediana a mínima por cumplir con su plan institucional.
- El 8 de junio de 2022 se ratifica custodia mínima por cumplir con el plan institucional asignado.
- El 4 de junio de 2023 se ratifica custodia mínima por continuar con buenos ajustes.
- El 19 de junio de 2023 finalizó terapias de Aprendiendo a Vivir sin Violencia.
- El 8 de marzo de 2024 fue sometido a prueba toxicológica arrojando negativo a todo tipo de sustancia controlada.
- El 2 de abril de 2024 se concede Dispensa para trabajo.
- El 8 de mayo de 2024 finalizó terapias de Trastornos Adictivos.
- El 5 de diciembre de 2024 fue citado para prueba toxicológica, no obstante[,] no dio la muestra después de que [s]e cumpliera el tiempo estimado por el **Reglamento interno para la administración de pruebas para detectar el uso de sustancias controladas en la población correccional del DCR.**
- El mínimo de su sentencia estaba para el 11 de noviembre de 2020 y el máximo está para el 11 de octubre de 2030.

El 23 de diciembre de 2024 la parte recurrente solicitó la reconsideración del referido dictamen. Sin embargo, el 4 de febrero de 2025 el CCT decidió no acoger la petición de reconsideración.

Inconforme con la determinación, la parte recurrente comparece ante nosotros sin delimitar el error específico que entiende cometido por el CCT.

El 28 de abril de 2025 compareció el Departamento de Corrección y Rehabilitación representado por el Procurador General.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II. Exposición de derecho

*a. El sistema de clasificación de confinados*

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[s]erá política pública del Estado... reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". De conformidad con este imperativo constitucional, el Art. 2 del Plan de Reorganización Núm. 2 del Departamento de Corrección y Rehabilitación (DCR) vigente, 3 LPRA Ap. XVIII, Art. 2, decretó como política pública del Gobierno de Puerto Rico, la creación de un sistema integrado de seguridad y administración correccional, [...] que establezca proceso de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.

En cumplimiento con esta política pública, el DCR promulgó el *Manual para la Clasificación de Confinados,* Reglamento Núm. 9151 del 22 de enero de 2020 (Reglamento Núm. 9151). Este describe la función básica del Comité de Clasificación y Tratamiento de la Institución como sigue: "evaluar a los confinados sentenciados en lo que respecta a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento social". Art. IV, Sec. 2 del Reglamento Núm. 9151, *supra*, pág. 19. Como propósito principal, el Comité tendrá como objetivos la rehabilitación y la seguridad pública, para lo cual evaluará las necesidades de seguridad y de programas de los confinados sentenciados para determinar cuál será el plan institucional para el confinado. *Íd.* inciso (A), pág. 19. Entre sus deberes figuran: (1) establecer el plan institucional para todo confinado de nuevo ingreso, el cual incluye el nivel inicial de custodia del confinado, su vivienda, trabajo, estudio, adiestramiento vocacional, tratamiento especializado debido a cualquier condición de salud, u otros programas y servicios y; (2) Revisar y aprobar todos los cambios en el plan de tratamiento de las instituciones. *Íd.,* pág. 21.

Por su parte, el plan institucional se define como una evaluación escrita de las necesidades de cada confinado en lo que respecta a programas y servicios, y las actividades programadas que se recomiendan para llenar

esas necesidades. Sec. 1 del Reglamento 9151, *supra,* pág. 11. El plan debe ser revisado durante el transcurso del encarcelamiento, por lo menos una vez al año. *Íd.*

Además, el Reglamento 9551, *supra*, pág. 1, establece que el método de clasificación de confinados es el eje central de una administración eficiente y un sistema correccional eficaz. La clasificación de los confinados consiste en la separación sistemática y evolutiva de éstos en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación. Introducción del Reglamento Núm. 9151, *Íd.* Referente a la determinación administrativa del nivel de custodia asignado a un confinado, el Tribunal Supremo en *Cruz v. Administración*, 164 DPR 341, 352–53 (2005),[1] dispuso que se requiere realizar un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. *Íd.*

En lo que respecta al proceso de reclasificación como tal, éste consiste en una evaluación periódica por el Comité mediante la cual se revisa el progreso de los confinados con arreglo al plan institucional de cada uno. Sec. 1 del Reglamento Núm. 9151, *supra,* pág.12. Este proceso tiene como fin recomendar posibles cursos de acción en cuanto a su rehabilitación. *Cruz v. Administración*, supra, pág. 354. Cabe destacar que es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. Sec. 7 (II) del Reglamento Núm. 9151, *supra,* pág. 48.

En ese sentido, el *Formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia),* se utiliza para actualizar y revisar la evaluación

---

[1] En el caso citado, el Tribunal Supremo hace referencia al ahora derogado Manual de Clasificación de Confinados, Reglamento Núm. 6067 de 22 de enero de 2000.

inicial de custodia del confinado. Sec. 7 (II) del Reglamento Núm. 9151, *supra*. La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada, debido a que su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.

Por lo tanto, para documentar el proceso de reclasificación del nivel de custodia de un confinado, se le asigna una puntuación. *Cruz v. Administración*, supra, pág. 353. A base del resultado que se obtenga es que el Departamento de Corrección recomienda un nivel de custodia que puede variar entre máxima, mediana, mínima o mínima comunitaria. *Íd.* Como parte del análisis correspondiente, se deben considerar ciertos elementos subjetivos y objetivos, para cuya atención se requiere la pericia del Departamento de Corrección. *Cruz v. Administración*, supra, pág. 352. Entre estos criterios que se deben analizar se encuentran:

> (1) el carácter y la actitud del confinado; (2) la relación entre éste y los demás confinados y el resto del personal correccional; (3) el ajuste institucional mostrado por el confinado, entre otros. Por otro lado, entre los criterios objetivos que tomará la agencia para emitir su recomendación se encuentran: (1) la magnitud del delito cometido; (2) la sentencia impuesta; (3) el tiempo cumplido en confinamiento, entre otros. *Íd.*[2]

Si el resultado obtenido resultara ser igual o menor de cinco puntos, la escala recomienda un nivel de custodia mínimo. Sec. III (A) del Apéndice F del Reglamento 9151, *supra*. No obstante, la *Escala de Reclasificación de Custodia* provee varios renglones de *modificaciones discrecionales*, para aumentar el nivel de custodia. Las modificaciones aludidas son un conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación. Sec. 1 del Reglamento 9151, *supra*, pág. 8.

Toda modificación de este tipo debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas,

---

[2] Análogo al Manual, *Íd.*, derogado, la Sec. 7 (III) (C) del Reglamento 9151, *supra*, (vigente) menciona criterios como los delitos y sentencias actuales, historial delictivo, fecha de excarcelación prevista, récord de conducta disciplinaria de la institución, etc.

informes del libro de novedades, documentos del expediente criminal y/o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional. Sec. III (D) del Apéndice F del Reglamento 9151, *supra.* Entre estas modificaciones se encuentran: la gravedad del delito, el historial de violencia excesiva, la afiliación prominente con grupos, confinado de difícil manejo, entre otras. *Íd.*

No obstante, somos conscientes de que nuestro Tribunal Supremo advirtió en *Cruz v. Administración*, supra, págs. 358-359, que tomar en consideración únicamente un factor de la condena al momento de reclasificar a un confinado, como, por ejemplo, la extensión de la sentencia constituye un claro abuso de discreción por parte de dicho cuerpo administrativo. Es decir, está claramente establecido que las determinaciones de custodia no pueden basarse exclusivamente en el largo de la sentencia, sino que, "dependerá de otra serie de factores que han sido elaborados en los manuales y reglamentos antes discutidos, y los cuales tienen el efecto de limitar la discreción de la agencia al momento de adjudicar controversias relativas a la reclasificación de custodia de confinados". *Íd.*, pág. 354. En síntesis, la evaluación de reclasificación tiene que dar énfasis en, "la conducta real del confinado durante su reclusión". *López Borges v. Adm. Corrección*, 185 DPR 603, 621-622 (2012).

Ahora bien, no debemos perder de vista que el propósito de la reclasificación es determinar cuán apropiada es la designación de la custodia en ese momento. *López Borges v. Adm. Corrección*, *supra*, pág. 608. Precisamente por esa razón es que el Tribunal Supremo de Puerto Rico le ha reconocido al DCR la pericia necesaria para evaluar los factores subjetivos y objetivos correspondientes, puesto que es este quien cuenta con los profesionales para atender las necesidades de los confinados y realizar las evaluaciones de clasificación, entre éstos: técnicos sociopenales, oficiales correccionales y consejeros. *Cruz v. Administración*, supra, págs. 352-355. Por lo anterior, no cabe duda de que es el DCR la agencia con obligación en

ley y con el peritaje para realizar el referido balance de intereses. *Íd.* De conformidad, los tribunales apelativos debemos sostener las decisiones del Comité siempre que éstas sean razonables, cumplan con los procesos reglamentarios y no alteren los términos de la sentencia impuesta. *Íd.*

   *b. Estándar de revisión judicial*

   Es norma de derecho bien conocida aquella que manda a que los tribunales apelativos otorguemos gran consideración y deferencia a las decisiones administrativas, por causa de la experiencia y conocimiento especializado que poseen las agencias sobre los asuntos que se le han delegado. *Asoc. Fcias. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010). El Tribunal Supremo ha establecido que las decisiones de los foros administrativos tienen a su favor una presunción de regularidad y corrección. *Empresas Loyola v. Com. Ciudadanos,* 186 DPR 1033, 1041 (2012); *Calderón Otero v. CFSE,* 181 DPR 386, 395 (2011).

   Conforme ha sido interpretado por nuestro Tribunal Supremo, **la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción**. (Énfasis provisto). *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010). La revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) las conclusiones de derecho fueron correctas. *Rolón Martínez v. Caldero Lopez,* 201 DPR 26, 36-37 (2018).

   Según mencionamos, al revisar una decisión administrativa nos corresponde dar deferencia a las determinaciones de hecho, si se fundamentan en evidencia sustancial que conste en el expediente. *Acarón et al. v. DRNA,* 186 DPR 564, 584 (2012). Dicha deferencia cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo erró al aplicar la ley; (3) actuó de manera arbitraria,

irrazonable o ilegal; (4) lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016): *Acarón et al. v. DRNA*, supra*; Costa Azul v. Comisión*, 170 DPR 847, 852 (2007). Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Torres Rivera v. Policía de PR*, supra, pág. 628.

A tales efectos, la Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA Sec. 9675, dispone que las determinaciones de hechos de las agencias serán sostenidas por los tribunales si se basan en prueba sustancial que obre en el expediente administrativo. Se considera **prueba sustancial aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión**. *Rolón Martínez v. Caldero Lopez*, supra, pág. 36. Lo anterior, **pretende evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor**. (Énfasis suplido). *Torres Rivera v. Policía de PR*, supra, 627. Así, la misma alta curia ha establecido que los tribunales apelativos tienen la obligación de examinar la totalidad de la prueba sometida ante la agencia, según consta en el expediente administrativo. *Íd.* Por tanto, el récord administrativo constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. *Torres v. Junta de Ingenieros*, 161 DPR 696, 708 (2004).

## III. Aplicación del Derecho a los hechos

El asunto medular traído ante nuestra consideración por el señor Sánchez Rodríguez es si la determinación del CCT de reclasificar su nivel de custodia mínima a mediana, luego de imponer un positivo administrativo por no dar la muestra en el término reglamentario de dos (2) horas, fue razonable a la luz del expediente administrativo. Como fundamento para su petición de revisión judicial, la parte recurrente aduce que no se negó a proveer la muestra, sino que no la pudo dar en el tiempo reglamentario puesto que

tiene una condición médica que le dificulta la toma de muestras toxicológicas.

Por su parte, el DCR, por vía del Procurador General, nos solicita que confirmemos el dictamen recurrido, habida cuenta de que el CCT utilizó el criterio discrecional de *desobediencia ante las normas* como fundamento para la decisión administrativa ante nuestra consideración. Arguye que lo anterior está sustentado por el Reglamento Núm. 9151, *supra*, y por el expediente administrativo.

Evaluadas las respectivas posturas de las partes, concluimos que la decisión del foro administrativo fue razonable. Por lo cual, no hay motivo para intervenir con el criterio de la agencia recurrida. Particularmente, juzgamos que no está en controversia el hecho de que el señor Sánchez Rodríguez no dio la muestra para la prueba toxicológica dentro del término de dos (2) horas que dispone el Reglamento Interno para la Administración de Pruebas para Detectar el Uso de Sustancias Controladas en la Población Correccional del Departamento de Corrección y Rehabilitación, *supra*. Tampoco se encuentra controvertido que la parte recurrente obtuvo una puntuación de cero (0) en la *Escala de Reclasificación de Custodia*, lo cual corresponde al nivel mínimo de custodia.

Sin embargo, del documento aludido surgen varios motivos para modificar discrecionalmente el nivel de custodia, entre los que se encuentra la *desobediencia ante las normas*, el cual fue aplicado a la parte recurrente. Estos, a su vez, provienen de la Sección III (D) del Reglamento 9151, *supra*, la cual faculta al CCT a realizar modificaciones discrecionales para niveles de custodia más altos siempre que estén basadas en documentación escrita que evidencie comportamiento contrario a las normas y seguridad institucional. Adicionalmente, la parte recurrente sustenta su postura en documentos que no formaron parte del expediente original, por lo que carecemos de elementos para superar la deferencia que les merece a las determinaciones del CCT.

De conformidad con lo antes expuesto, reiteramos que nuestra función revisora de las determinaciones del CCT del DRC es de carácter limitado puesto que se le ha delegado implantar una política pública que requiere un alto grado de especialización o control de recursos y competencias institucionales. También, recalcamos que para impugnar la razonabilidad de la determinación o demostrar que la evidencia que obra en el expediente administrativo no es sustancial, es necesario que la parte recurrente señale la prueba **en el récord** que reduzca o menoscabe el peso de tal evidencia. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999). (Énfasis provisto). Al ejercer nuestra gestión revisora, debemos considerar la evidencia presentada en su totalidad, tanto la que sostenga la decisión administrativa, como la que menoscabe el peso que la agencia le haya conferido. *González Segarra y otros v. Corp. del Fondo del Seguro del Estado*, 188 DPR 252, 276-277 (2013) citando a *Otero Mercado v. Toyota de Puerto Rico Corp.*, 136 DPR 716, 727-728 (2005). Lo antes dicho, implica que las decisiones de las agencias administrativas tienen a su favor una presunción de legalidad y corrección que debe respetarse por los tribunales. Rolón Martínez v. Caldero López, 201 DPR 26,35 (2018).

En fin, al revisar el expediente ante nuestra atención, resulta forzosa la conclusión de que no están presentes los elementos que nos habilitarían para intervenir con el criterio del CCT, por cuanto es la entidad con la pericia necesaria para analizar la manera en que la reclasificación de custodia afecta la población general en las instituciones carcelarias del país. Por ello, y en ausencia de alguna excepción que nos permita ceder nuestra deferencia sobre el dictamen administrativo, estamos obligados a confirmar la *Resolución* recurrida.

## IV. Parte dispositiva

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, confirmamos la decisión del Comité de Clasificación y Tratamiento recurrida.

Notifíquese al Administrador de Corrección, quien deberá entregar copia de esta Sentencia al confinado, en cualquier institución donde se encuentre.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones